[No. 10,524.—In Bank.]

# PEOPLE *v.* J. H. CUMMINGS.

VARIANCE.—In the copy of the forged instrument set forth in an indictment for forgery, a word was spelled *shipped*, and in the instrument offered in evidence as the original, the same word is spelled *shiped*. Held, that the variance was not such as to exclude the instrument from the jury.

ID.—The rule in such cases appears to be, that where the word is so misspelled as to preclude the possibility of its being mistaken for any other word in the English language, the import of it is a proper question for the jury to pass upon.

JURY TRIAL—INSTRUCTIONS—PRACTICE—IMMATERIAL ERROR.—It is error to allow the jury to take with them instructions refused by the Court; but a party cannot complain of the error, if the instructions be those asked by himself.

APPEAL from a judgment of conviction, and an order denying a new trial, in the County Court of Yuba County. BLISS, J.

No briefs on file.

SHARPSTEIN, J.:

The evidence in this case tends to prove that the defendant, about the 1st of October, 1878, went to one Asa Fisk, at San Francisco, and asked him to advance $300 to pay the balance due on a purchase of ten tons of broom-corn, by the defendant, of Hong Po & Co. of Marysville, as evidenced by their bill of sale to him. Fisk declined to advance the sum applied for, without an absolute transfer of the property to him by the defendant; and thereupon he signed a certificate on the back of

the bill of sale of the broom-corn from Hong Po & Co. to him, to the effect that he had sold said broom-corn to Fisk. Fisk deposited with Wells, Fargo & Co. $300, to be paid Hong Po & Co. upon presentation by them to the agent of Wells, Fargo & Co. of a bill of lading, stating that ten tons of broom-corn had been shipped to Fisk by San Joaquin steamer, Captain Dwyer.

It is charged in the indictment, that the defendant, with intent to obtain the money which Fisk had given to Wells, Fargo & Co. to pay the balance due upon said broom-corn upon the conditions above stated, forged a receipt in writing, of which the following is a copy:

"MOHAN'S FERRY, October 5th, 1878.

"Received of Hong Po & Co. (10) ten tons of broom-corn, all in good order, to be shipped to A. Fisk, San Francisco, said Fisk to pay freight. I will take said corn on my next trip.

"P. DWYER, Captain."

An instrument was offered in evidence, as the original of the foregoing, and its introduction was objected to, on the ground that some of the words were not spelled alike in the copy and the original. In the latter, the word "shipped" is spelt "shiped," and the word "said," "saide"; but we are unable to discover that ferry is spelt "ferrey," as specified in the objection. The objection was overruled, and the defendant excepted. Under the familiar rule as to *idem sonans*, the variance between *ferrey* and *ferry* or *saide* and *said* is immaterial; but we are not aware of any rule of pronunciation by which *shiped* could be pronounced *shipped*, and yet the variance between them is no greater than it is between *undertood* and *understood*, which Lord Mansfield held to be immaterial. (*Rex* v. *Beach*, 1 Leach, 158.) The rule appears to be, that where a word is so misspelled as to preclude the possibility of its being mistaken for any other word in the English language, the import of it is a proper question for the jury to pass upon. (*Rex* v. *Hart*, 1 Leach, 172.) The ruling of the Court seems to have been in accordance with this rule, and it follows, that the exception to that ruling is not well taken.

The exceptions to the rulings of the Court upon defendant's objection to the introduction in evidence of letters written by

Fisk to Hong Po & Co., and to Wells, Fargo & Co., cannot be sustained. Fisk testifies that these letters were written under the instructions of the defendant; and they tended to prove that the defendant knew that the $300, which was deposited with Wells, Fargo & Co., was Fisk's money, and was not to be paid to any one except upon the condition stated in said letters; viz., the delivery of the bill of lading before mentioned to them; and that if they paid it to any one upon any other condition, they would be responsible to Fisk, and not to the defendant, for it.

There being no evidence in the bill of exceptions which tends to prove that the defendant borrowed or owned the $300 drawn upon the forged receipt or bill of lading, it was not error for the Court to refuse to give any instruction based upon that hypothesis.

An exception is taken to the action of the Court in permitting the jury to take with it when it retired for deliberation, against the defendant's objection, certain instructions which had been asked by the defendant and refused by the Court. It appears, that the Court permitted the jury to take the instructions refused, as well as those given. There is an excuse assigned for this, which, if the act constituted an error, would not obviate it. But we do not think that the act of itself constitutes an error, for which the judgment should be reversed. If the jury had overlooked the indorsement "refused," the defendant might have been advantaged by the error of which he complains. If they did not overlook that indorsement, the natural inference would be, that no such instruction had been given. That it was error for the Court to permit the jury to take with them the instructions refused, we entertain no doubt. But in this case, it is one of which the defendant cannot complain, because it has not actually prejudiced him, or tendered to his prejudice, in respect to a substantial right. (Pen. Code, § 1404.) If any instructions unfavorable to the defendant, which had been asked by the people and refused by the Court, had been taken out by the jury against the defendant's objection, we think that it might have tended to the prejudice of the defendant in respect to a substantial right. Therefore, the practice is one which we cannot commend in any case.

The transcript contains several affidavits in support of defendant's motion for a new trial on the ground of newly discovered evidence. It also contains some counter-affidavits which tend to show that the defendant was not ignorant of what he could prove by some of the witnesses before the trial, and that he was afforded all necessary facilities for securing the attendance of all his witnesses at the trial. It is stated in one of the counter-affidavits, that the defendant gave, as a reason for not subpœnaing more witnesses, that his counsel advised him that he had enough without them to prove an *alibi*. The defendant's son, as appears by his own affidavit, was willing to testify that he committed the forgery with which his father was charged. At the time of defendant's trial, this son was confined in jail at San Francisco, upon several charges of forgery. It does not appear that defendant made any move to procure the son's deposition, until after his, defendant's, trial had commenced. No good reason is given for the delay, and therefore due diligence is not shown. Such diligence must be made apparent; and if there is any reasonable ground for doubting the defendant's ignorance of the evidence, before it was too late to obtain it, a new trial ought not to be granted on the ground of newly discovered evidence.

Judgment and order appealed from affirmed.

Ross, J., THORNTON, J., and MYRICK, J., concurred.