JOHN J. MENDENHALL, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

## Opinion filed April 18, 1916.

1. A general averment as to "certain mortal injuries and mortal sickness, a further description whereof is to the jurors unknown" will support an indictment for murder.

2. The denial of a motion by one charged with murder for a bill of particulars as to the cause or manner of death, is not error, it subsequently appearing that the accused was better informed on the subject than any State witness.

3. Pleas in abatement are bad that seek to attack the title to office of the judge presiding, while recognizing the validity of the office for which he is commissioned.

4. The discretion of the Circuit Court in ordering the talesmen summoned from the county at large, instead of drawing them from the jury box was not abused.

5. It is permissible to exhibit a colored photograph of the deceased to a witness who knew her by sight though not by name, for the purpose of identification, and the trial judge certifying that it was not exhibited to the jury, error cannot be predicated upon its assumed exhibition to the jury.

6. A party who desires to keep from the jury instructions asked by him that are refused, should separate them and make a timely request to the court that they be not given to the jury.

7. An admonitory charge to the jury that it would be a violation of their sworn duty to convict, unless the evidence convinces them beyond a reasonable doubt, and equally a violation to acquit when the evidence is conclusive, is not rendered objectionable by using the word "when," instead of "if," the connection here indicating they are synonymous.

8. In connection with other charges no possible harm resulted from the refusal to distinguish between a premeditated design to take human life and the intention to do so.

9. It is proper to add to an instruction that the defendant's own testimony may raise a reasonable doubt, the qualification that with his testimony, all the evidence should be considered.

10. Where the evidence shows that the grand jury could not have been more specific in stating the cause of death, no question for the jury as to variance in this particular is presented.

11. The refusal to instruct that if acts or words testified to were susceptible of a guilty or an innocent construction or interpretation, the defendant was entitled to the benefit of the ambiguity, constituted no error being sufficiently covered by oher charges.

Writ of Error to Circuit Court, Pinellas County; O. K. Reaves, Judge.

Judgment affirmed.

*John U. Bird, Thomas Palmer* and *W. B. Dickenson,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, and M. A. McMullen, State Attorney Sixth Judicial Circuit, for the State.

COCKRELL, J.—This writ of error is directed to a judgment sentencing Mendenhall to life imprisonment consequent upon a verdict of murder in the first degree with a recommendation to the mercy of the court.

The indictment alleged an assault upon one Susan F. Elliot "and in some way and manner, and by some means, instrument and weapons to the jurors unknown, he the said John J. Mendenhall did then and there unlawfully and from premeditated design to effect the death of the said Susan F. Elliot, inflict and create in the said Susan F. Elliot certain mortal injuries and mortal sick-

ness, a further description whereof is to the jurors unknown, of which mortal injuries and sickness, to the jurors unknown, the said Susan F. Elliot then and there died." A motion was made to quash the indictment as being too vague, uncertain and indefinite, and the motion was renewed at the close of the State's evidence. A motion was also made for a bill of particulars as to the cause or manner of the death. These motions were all denied. The form of the indictment has been upheld so recently and so pointedly by this court that we need only refer with our entire approval to the case of Houston v. State, 50 Fla. 90, 39 South. Rep. 468.

As to the motion for a bill of particulars and the subsequent renewal of the motion we need only say that an examination of the evidence clearly discloses that Mendenhall himself was better informed as to the exact cause of the death than any State witness, and that he confesses he doesn't know what was the cause, whether by bullet or by blow or by burning, and the dead body was so consumed by fire as to render impossible even a plausible guess as to the cause of death.

Upon his motion to quash being denied, Mendenhall filed four pleas in abatement, seeking to question the right of the presiding judge to sit in the case. A demurrer to this plea was sustained, and this is assigned for error. Passing over the singleness of the assignment to the joint ruling and the timeliness and propriety of the plea addressed to the judge whose judicial power is sought to be questioned, it is evident that the pleas go only to the personnel of the court, rather than to the integrity or legal existence of the tribunal; in other words it goes to the officer rather than to the office.

The first plea is very general, alleging merely that "the Honorable O. K. Reaves was not then and never

had been the legal and proper judge of the Sixth Judicial Circuit of the State of Florida, for Pinellas county, and that the said judge did not then and never has had any authority whatever to preside over the Pinellas County Court, or to draw and empanel a grand jury of said Circuit Court for said county," etc. This clearly recognizes the existence of the office of a Circuit Judge for said county, but attempts to attack the authority of "the said judge" to exercise that office.

The second plea is somewhat more specific and Judge Reaves' right to preside is sought to be overthrown upon the assertion that he resides in Manatee County and that therefore he does not reside in the circuit embracing Pinellas county. The constitution provides that a Circuit Judge "shall reside in the circuit of which he is judge." This plea, perhaps more clearly than the first plea, shows that the officer, not the office, is attacked.

The third plea attacks the legislation, Chapter 6975 Acts of 1915, fixing the boundaries of the Sixth Circuit and creating the Thirteenth Circuit, only in so far as to make the claim that the fourth section of that act is not covered by its title. It is so evident that this plaintiff in error is not concerned with that section as to make further comment unnecessary. See, however, State *ex rel.,* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767.

Much has been said in the argument based upon a supposed failure of the boundary line of Manatee county to touch the boundary line of Pinellas or Pasco, the other counties of the Circuit. We fail to see how this question is presented; certainly the pleas interposed offered no such issue. The navigable waters of Tampa Bay lie between the two counties, and there is no express provision in the constitution that the counties of a circuit must be contiguous; nor have counsel made it clear to us that any

provision of the constitution clearly implies such a command.

The fourth plea sets up that Judge F. M. Robles of Hillsborough County was and is the Judge of the Sixth Judicial Circuit, and that the Honorable O. K. Reaves was undertaking to preside over the Sixth Judicial Circuit in and for Pinellas County, as the Judge thereof, and as the Judge of no other court. This plea likewise goes to the right of Judge Reaves to exercise the duties of an office admitted to exist, that is the Judgeship of the Sixth Judicial Circuit, of which Pinellas County is a part.

There is no contention that Judge Reaves is not a *de facto* officer, clothed with the State's commission and exercising under legislative authority an office recognized by the constitution. No effective challenge of the *de jure* character of that office has been offered, and short of that the plaintiff in error may not be heard. As of course nothing here said is to be construed as an intimation that there can be cast by any procedure a shadow upon the integrity of Judge Reaves' authority to exercise the office of Circuit Judge of the Sixth Judicial Circuit, as now fixed by statute.

A request was made that the special venire of one hundred talesmen be drawn from the jury box, but this was denied. It would seem, though the record proper is silent as to this, that the sheriff was directed to summon these talesmen from the body of the county. It was shown that the jury box had several hundred names still undrawn, and affidavits were filed.

Inasmuch as the transcript of the record proper is silent as to how the jury was drawn, we might well refuse to pass upon the assignment, but in view of the gravity of the sentence, we have carefully gone over the affi-

davits in support of the suggestion that the sheriff of the
county was unduly prejudiced, and the counter affidavits.
Giving to the affidavits for the defense their full weight,
in so far as they set forth specific declarations of the
sheriff, they merely indicate that in his judgment the
State had a strong case against the defendant, and the
discretion reposed in the trial judge to determine the
method of selecting the jury was not abused. He was
not necessarily called upon to anticipate wrong doing on
the part of the sheriff, and the very full examination set
forth in the bill of exceptions of those talesmen on the
voire dire fails to show that any juror who actually sat
in the case was in anywise prejudiced or otherwise ob-
jectionable. It is true that many of them had heard the
case discussed and had read something of the newspaper
accounts, but none had talked with any witnesses nor
read what purported to be their testimony. It would
have been practically an impossibility to have gotten in
that county a jury so ignorant of current events as to
have heard nothing of this case, and the fact that they
recommended the mercy of the court upon this evidence,
clearly showed they had no prejudice against this plain-
tiff in error.

Error is predicated upon the alleged exhibition to the
jury of an enlarged colored photograph or picture of the
dead girl. The Circuit Judge in settling the bill of ex-
ceptions declined to certify that the picture had been ex-
hibited to the jury, and expressly stated that it had not
been so exhibited, and we do not see how we can assume
that it was. It appears that a witness for the State testi-
fied that he saw a girl named Susie, but whose further
name he knew not, get into an automobile with Menden-
hall shortly before the homicide. The picture was pre-
sented to the witness and he identified it as being the

likeness of that girl. The girl's father subsequently iden-
tified the picture as that of the slain girl. This clearly
rendered the picture admissible in evidence; in fact, the
only argument addressed to us is directed to its exhibi-
tion to the jury, and as we have said, the court certified
it was not exhibited. Physically it was easy to exhibit
the picture to a witness and not to the jury, and as we
understand the certificate of the judge, that was in fact
done.

It is next urged as error that the court over objection
delivered to the jury the general charge, and the special
instructions requested by the defendant, some of which
were marked "given" and some of which were marked
"refused."

We are without precedents directly upon this prac-
tice. We have held that it was not error to decline to
read to the jury requested instructions that had been re-
fused, indicating that it was safer not to do so. Stew-
art v. Mills, 18 Fla. 57; Sherman v. State, 17 Fla. 888.

It does not appear that objection was made at the
time the charges were given to the jury, though such was
the practice of the court, and it would seem that coun-
sel knew they were so given before the jury had time to
examine them and no request was made that they be with-
drawn.

We may indulge in abstract speculation and imagine
cases where such practice might result in prejudicial er-
ror, but we can find none here. The refused charges
were either properly covered by the general charge or so
pregnant with error that the jury should not have been
permitted to take them as the law for their guidance.
From the *voir dire* examination it appears that these jur-
ors were rather above the average in intelligence, and we
must assume that they would not be misled by the fact

that certain instructions marked refused were physically before them, when the court had specifically told them that only his general charge and those of the defendant he had granted and read to them constituted the law of the case; this was an intimation that they were in nowise concerned with those marked refused, and was not an invitation to idle speculation as to why they were refused. Moreover there is no doubt in the evidence that a murder most foul was committed, and the only possible theory of a defense suggested is that another than the accused committed the crime or possibly that certain self-inflicted wounds may have caused death. The court charged upon premeditated design and the necessity of proof by the State beyond a reasonable doubt and there was no occasion for repeating these charges in different language. These charges as given were clear and to the point, separate from and disconnected with other charges.

We find few cases from other jurisdictions to assist us in stating the law. In Texas a statute forbids the court sending out to the jury a refused instruction, Trinity County Lumber Co. v. Denham, 85 Texas 56, 19 S. W. Rep. 1012, while in Alabama it is expressly permitted by statute, Beard v. Ryan, 78 Ala. 27, where the court says, citing the statute: "It is often just as important for the jury to clearly understand what the law *is not* as to know what it *is*."

By General Statutes, section 1499, instructions, as well those given as those denied, are signed by the judge, immediately after delivery or refusal is filed by the judge, and form a part of the record in the case. It frequently happens that several requested instructions are written upon one sheet of paper, and if the jury request this important portion of the record to aid them in their deliberations, it may well be that the instruction refused ap-

pears on the middle of a page between those given. It would seem, therefore, no hardship upon those requesting a number of instructions to see to it that he be not further injured by the court's refusal to give his instructions, by arranging in advance of the retirement of the jury that these instructions be so separated as to be easily detached, and in the absence of such showing he be held to consent to all his instructions, whether given or refused, going to the jury. See People v. Cummings, 57 Cal. 88.

The court charged: "Remember it would be a violation of your oath as jurors and of your duty as citizens, to convict an accused person on testimony, which fails to convince you beyond every reasonable doubt of his guilt; and that it would be equally a violation both of your duty, as well as an encouragement to others to violate the law, to acquit a defendant when the evidence is conclusive and satisfies you beyond reasonable doubt of his guilt. Permit no feeling of prejudice on the one hand, nor of sympathy on the other, to influence your verdict. Do your whole duty like men worthy of the high responsibilities of citizenship and leave the consequences where they rightfully belong. With your whole duty performed you will have no concern with the consequences." This charge is criticised only in the use of the word "when" in the phrase "when the evidence is conclusive and satisfies you beyond reasonable doubt of his guilt," as indicating an opinion that the evidence in this case was so conclusive. This criticism is over-refined. Taken as a whole, the charge is an admonition to be guided by the evidence in the case, irrespective of consequences. Again and again the jurors were told that the finding of facts was solely their province, and they could only have understood that it was for them to find

whether the evidence called for an acquittal or a conviction under the law as given by the court. The word "when" has a conditional concept in it and as here used means "if." Lightman Bros. v. Epstein, 161 Ala. 660, 51 South. Rep. 164.

The court charged at length upon premeditated design, including deliberation, as an essential element. There is no suggestion of heat of passion, intoxication or other than a normal, cool mentality, and no possible harm could result from the refusal to charge as requested, that a distinction existed between a premeditated design to take human life and an intention so to do.

An instruction urging one juror who may have a reasonable doubt to hold out against the other eleven has been frequently condemned by this court. Ayers v. State, 62 Fla. 14, 57 South. Rep. 349, and cases cited.

It is improper to single out the testimony of one witness and to tell the jury they may find their verdict upon that testimony if they believe it. It was proper to add therefore to a requested instruction of the defendant, that his testimony by itself might raise a reasonable doubt, the qualification that with his testimony they should consider all the evidence in the case. This addition is not subject to the criticism that it prevents the jury from disregarding testimony they may find incredible. A due consideration of the entire evidence does not deny to the jury a right specifically adverted to in another charge, to disregard so much of the evidence as they did not believe.

In this opinion we have discussed the evidence as to the precise cause of death, and we have held there was no evidence to make an issue for the petit jury as to whether the grand jury might have been more specific in alleging the cause of death.

An instruction was requested to the effect that if words or acts testified to were susceptible of a guilty or an innocent construction or interpretation, the defendant was entitled to the benefit of any reasonable doubt arising from that ambiguity. The refusal to give this instruction constitutes no reversible error. It was necessarily included in the general charge as to proof beyond a reasonable doubt, and we are clear upon this evidence that this plaintiff in error has had the full benefit of every safeguard provided by the law.

The judgment is affirmed.

TAYLOR. C. J., and SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.