ROBERT ELLIOTT AND EULIE RUSSELL, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion filed May 12, 1919.

1   The allegation in an indictment for obtaining money under false pretenses, that the defrauded party "paid" or "paid over" to the accused a certain sum of money, and that he took and received a check in exchange for said money is equivalent to an allegation that the person to whom it was paid, obtained it.

2   A joint indictment against two persons, charging by proper averments the commission of a crime by the one, and that the other was present aiding, abetting and assisting in the commission of the crime, is sufficient as to the latter without repeating in the allegations as to him the acts that constitute the crime charged.

3. The ruling of a trial court on the question of granting or denying a motion for a continuance will not be disturbed by this court unless there has been a palpable abuse of discretion.

4. Where all the acts of an accessory before the fact, are committed in a different jurisdiction from that where the principal offense was committed, the accessory may be indicted, tried and convicted in the same court and county in which the principal felon is indicted and tried, but the indictment must allege the place where the acts constituted him an accessory were committed.

5. Where the law allows an indictment in a county other than that in which the offense was committed, all the facts should be laid in the county where they actually happened.

6. Section 3191, General Statutes of Florida, 1906, which provides that "A person charged with counselling, hiring or otherwise procuring a felony to be committed, may be indicted, tried and convicted in the same court and county in which the principal felon might be indicted and tried, although the offense of counseling, hiring, or procuring the commission of such felony is committed on the high seas or land, either within or without the limits of this State," does not change the common law rule that acts done by a person without the limits of the county must be laid in the indictment as having been performed where they actually occurrd.

A Writ of Error to the Circuit Court for Washington County; C. L. Wilson, Judge.

Affirmed in part; reversed in part.

*John H. Carter, Fred H. Davis, Mathis & Weeks* and *L. D. McRae,* for Plaintiffs in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

BROWNE, C. J.—Robert Elliott and Eulie Russell were found guilty in the Circuit Court for Washington County on an indictment charging Robert Elliott with obtaining money under false pretenses, and Eulie Russell with being present, aiding, abetting, assisting, counseling and advising Robert Elliott in the commission of the offense, and seek reversal by writ of error.

The first assignment of error is based on the order of the court sustaining the demurrer to the plea in abatement. The point presented is that the grand jury that found the indictment was an unlawful one in that the legal panel was quashed, and the court ordered the sheriff to summon a jury from the body of the county, and the sheriff, instead of going outside of the court house, summoned the men who had previously been discharged as grand jurors. It is contended that when a sheriff is ordered to summon a jury from the body of the county he is precluded from summoning bystanders. While there may be some impropriety in the sheriff executing the order of the court in this manner, there is nothing in the law to warrant the conclusion that a jury so summoned is an illegal one. There is nothing to show that the men so summoned did not come from the body of the county, and the demurrer to the plea in abatement was properly sustained. Ford v. State, 44 Fla. 421, 33 South. Rep. 301; Davis v. State, 46 Fla. 137, 35 South. Rep. 76; Mendenhall v. State, 71 Fla. 552, 72 South. Rep. 202; Thomas v. State, 73 Fla. 115, 74 South. Rep. 1, headnote 13.

The second assignment of error is based on the overruling of defendant's motion to quash the indictment.

On behalf of Elliott it is contended that it is not charged that he "obtained" the money from the bank. The indictment says "that Robert Elliott * * * did then and there designedly by false pretenses, and with intent to defraud the Chipley State Bank, a corporation, obtain from the said bank, and from C. B. Royster, the cashier thereof, Twenty Seven Hundred and Fifty Dollars," etc.

The point made by the plaintiff in error is that this part of the indictment is the inducement, and that the subsequent part that follows the words "that is to say" does not charge Elliott with having obtained the money, but alleges that the Chipley State Bank and its cashier "let the said Robert Elliott have, and then and there paid to the said Robert Elliott," etc.

The first part of the indictment described the offence substantially in the words of the statute, and the part that follows the words "that is to say" sets out in detail the manner in which the offence was committed.

The allegation in an indictment that the defrauded party "paid" and "paid over" to the accused a certain sum of money and that he took and received a check in exchange for said money is equivalent to an allegation that the person to whom it was paid, obtained it.

The rule is thus stated in 3 Bishop's New Crim. Pro. § 175, "To constitute the completed offence, the thing must be obtained, the allegation whereof must be in words fully covering the idea."

We think the words used in this indictment fully cover the idea that Elliott "obtained" the money from the bank.

Plaintiff in error further insists that indictment is defective as to Russell because it does not allege the specific acts, or by what means and manner he aided and

assisted Elliott to commit the offence.  The sufficiency of this indictment to charge Russell with having aided and abetted Elliott in committing the offence seems to be settled in this State.  "A joint indictment against two persons, charging by proper averments the commission of a crime by the one, and that the other was present aiding, abetting and assisting in the commission of the said crime, is sufficient as to the latter without repeating in the allegations as to him the acts that constitute the crime charged."  Everett v. State, 33 Fla. 661, 15 South. Rep. 543.

The third, fourth and fifth assignments are based upon the denial of the motions of Eulie Russell for a severance and continuance for the term made on June 26th, and on July 10th.  Had the motion for continuance been granted, the severance would have followed, but the motion for cotninuance did not come within the rule in several particulars.  It did not give the names of the witnesses, nor did it show that they were in the State of Florida and subject to the jurisdiction of the court.  The affidavit refers to "two certain witnesses, one, who he is informed resides in the State of Alabama, and the other probably in the State of Florida."  As the motion did not come within the rule and it is not shown that there has been a palpable abuse of the broad discretion vested in the trial courts in granting or denying applications for continuance of causes, it was not error to deny the motions for continuance.  Having properly denied them, there was no error in denying the motion for a severance on the showing made.

The eighth, ninth and tenth assignments are based upon the denial of challenges of certain jurors on account of their being depositors in the Chipley State Bank whose,

money the defendants were charged with having fraudulently obtained.

The mere fact that a person is a depositor in a bank does not *ipso facto* disqualify him to serve as a juror in all cases where the bank is interested, or is the injured party in a criminal prosecution. But we can see how under certain circumstances his interests might be so affected by the transactions out of which the cause arose as to disqualify him. In each case the bias of the juror should be carefully inquired into on the examination on his voir dire, and the trial judge should allow a challenge for cause, if it seems that his connection with the bank as a depositor might cause him to lean towards or against one of the parties to the trial.

So carefully are the courts to guard the constitutional right of a person to a fair and impartial trial that it has been held that in a prosecution for stealing a dollar's worth of electricity from an electric company a motorman on one of the company's street cars was not a qualified juror. Berbette v. State, 109 Miss. 94, 67 South. Rep. 853, and that "a tenant from year to year is disqualified to serve as a juror in a suit in which his landlord is a party." Pipher v. Lodge, 16 Serg. & R. (Pa.) 214.

In the case of Harrisburg Bank v. Forster, 8 Watts (Pa.) 304, a tenant of one of the directors of the bank was held to be disqualified to serve in a suit by the bank on a promissory note; and an employee of a Compress Company, some of the stock of which was held by a Railroad Company, was disqualified to serve in a suit for personal injuries against the Railroad Company. Temples v. Central of Georgia R. Co., 15 Ga. App. 115, 82 S. E. Rep. 777.

The half-brother of a witness who had been promised a position as overseer in the event his testimony resulted in the recovery of certain plantations, was held to be disqualified, although the juror swore that he did not know that the witness, his half-brother, had any interest in the matter, and there was no circustance to "cast even the least shadow of doubt upon the truthfulness of his denial." Beall v. Clark, 71 Ga. 818.

It has been held that even where a juror swears "that he could give the defendant a fair trial, the judge, of course, would not be bound thereby to find accordingly, and certainly ought not to do so if it should appear to him otherwise from all the evidence offered." State v. Coella, 3 Wash. 99.

One of the four heads under which Lord Cocke classified exceptions to particular jurors, is *Propter Affectum,* and the Supreme Court of Pennsylvania has construed this to mean "for suspicion of bias or partiality." Harrisburg Bank v. Forster, *supra,* and the same view is taken by the Georgia Court, which says: "It is the duty of a trial court to see that defendants in criminal cases are tried by a jury such that not even the suspicion of bias (leaning) or prejudice (prejudgment) can attach to any member thereof." Jacobs v. State, 1 Ga. App. 519, 57 S. E. Rep. 1063 Beall v. Clark, *supra;* Temples v. Central of Georgia R. Co. *supra.*

As it does not appear from the record that these jurors were biased or prejudiced, or that the circumstances of this case were such as to evince good reason for interest or bias, we find no reversible error in the ruling of the court on refusing the defendants challenge of these jurors for cause.

The eleventh and twelfth assignments relate to the refusal of the court to strike the testimony of a witness in regard to seeing a strange man walking between the railroad depot and the garage where the defendant Russell had been working. This testimony was irrelevant and immaterial, but as the evidence clearly establishes the guilt of the defendant Elliott, and even without this testimony, we fail to see how the jury could have done aught but find him guilty, the error was not harmful. This, however, would not justify the introduction of this testimony on a subsequent trial of one of these defendants.

The motion to strike the testimony of the witness Herman Rogers was properly denied. The testimony shows that Elliott asked the cashier of the Chipley State Bank if he had received a telegram from a Houston National Bank of Dothan, Alabama, and subsequently the cashier of the bank received what purported to be a telegram from the Houston Bank and so informed Elliott. This telegram was one of the false representations used by Elliott to induce the bank to part with its money. Rogers was a Western Union telegraph messenger and was in company with James Shirley, another Western Union messenger, when a man, whom he identified as Eulie Russell, gave a telegram to Shirley in front of Houston National Bank in Dothan, Alabama, and he went with Shirley to the telegraph office and saw him deliver it to the Western Union office. This was a circumstance tending to connect Russell with the crime, and the rule in this State is that "Evidence of circumstances tending to connect the accused with the commission of an alleged crime, even though inclusive, is properly admitted." Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Goode v. State, 50 Fla. 45, 39 South. Rep. 461. Shirley idenitfied Russell

as the man who gave him the message, and says that Russell gave him a dollar to pay for sending it; that the toll was sixty-eight or sixty-nine cents, and Russell told him if there was any change left to keep it.

The thirteenth assignment not being discussed in the brief, is abandoned.

The fourteenth assignment is based upon the admission in evidence over the defendant's objection of a rubber stamp bearing the words "Houston National Bank, Dothan, Alabama," found six or seven weeks after the offence charged was committed, in an abandoned storeroom in a garage formerly used by Russell. This testimony was properly admitted under the rule cited *supra*.

The fifteenth assignment is abandoned.

The sixteenth is based upon the refusal of the court to give this charge requested by the defendants: "If you believe from the evidence that the defendant Elliott obtained the money alleged from the Chipley State Bank, upon the strength of the telegram purporting to come from Houston National Bank guaranteeing the payment of said sum, and not upon representations specified in the first count, you will find the defendant not guilty upon the first count."

We do not think there is anything in the testimony to show that the Chipley State Bank paid Elliott the money on the strength of the telegram alone, and not upon the representations made by Elliott. Mr. Royster, the cashier, in response to a question whether he paid the money out on the strength of Elliott's representation that he had money in Dothan, or upon the request, or apparent request, of the Houston National Bank as contained in

the telegram, replied: "Well both. If he had told me he didn't have it in Dothan I certainly wouldn't have paid it on the telegram." This witness was the only one that testified as to how Elliott obtained the money from the bank. An effort was made to have Mr. Royster say whether he paid the money upon the authority of the telegram alone, or solely upon the representations made by Elliott. At one part of his testimony he said he would not have paid the money had not the telegram been delivered to him, but he also said that he believed when he received the telegram that Elliott's representations that he had money on deposit at the Houston National Bank was true, and that he would not have paid the check if he had not believed that he had, and that his account was with the Dothan Bank.

We think the testimony makes it quite clear that Elliott obtained the money from the Chipley State Bank by means of the false representations described in the indictment.

The seventeenth assignment is based upon the refusal of the court to give this charge: "If you believe from the evidence that the defendant Russell gave no aid, counsel, assistance, or encouragement to the obtaining of the money by Elliott in Washington County before he obtained it, but that such aid, counsel, assistance or encouragement, if any was given, was given at Dothan in the State of Alabama, then the allegation that it was given in Washington County, Florida, would not be proven, and you would find the defendant Russell not guilty."

This presents a more serious question.

The indictment contains two counts. The first charges that "on the 9th day of March A. D. 1918 in the County

of Wasihngton and State of Florida, Eulie Russell;, then and there being, * * * did aid, abet, assist, counsel and advise the said Robert Elliott the aforesaid felony to do and commit."

The second count charges that "on the 9th day of March, A. D. 1918, in the County of Washington and State of Florida, Eulie Russel then and there being * * * did aid, abet, encourage, assist, counsel and command the said Robert Elliott the aforesaid felony to do and commit."

The point is made that if the assistance that Russell gave to Elliott was by acts performed in Alabama, there is a fatal variance between the proof and the allegation in the indictment that Russell aided, abetted, assisted, counseled and advised Elliott in Washington County, Florida.

Section 3184 of the General Statutes of Florida of 1906 provides that: "When the commission of an offence committed elsewhere is consummated within the boundaries of this State, the offender shall be liable to punishment here, though he was out of the State at the commission of the offence charged, if he consummated it in this State through the intervention of an innocent or guilty agent, or by any other means proceeding directly from himself, and the jurisdiction in such case, unless otherwise provided by law, shall be in the county in which the offence was consummated.

Section 3191 provides that: "A person charged with counseling, hiring or otherwise procuring a felony to be committed, may be indicted, tried and convicted in the same court and county in which the principal. felony might be indicted and tried, although the offense of coun-

seling, hiring, or procuring the commission of such felony is committed on the high seas or land, either within or without the limits of this State."

These statutes confer jurisdiction upon the courts to try persons for acts committed beyond the boundaries of the county or State where the indictment is found, and their validity is not attacked in this case. It is not a question of jurisdiction, but a question of pleading, governed by well-settled rules vitally affecting the right of a defendant to have the acts that go to make up his alleged offence, so stated as not to mislead and embarrass him in the preparation of his defence.

All the acts that the testimony discloses to have been done by Russell, constituting him an accessory before the fact, to Elliott, were performed in Dothan, Alabama. It is true the effect of these acts was to enable Elliott to consummate the offence in Washington County, Florida, and under our statutes Russell can be "indicted, tried and convicted" in that county, but the indictment should be so drawn as to apprise him of the place where it is claimed he committed these acts. The indictment put him on notice that the State intended to prove that he committed them in Washington County, in the State of Florida, and then surprised him by proving that they were committed in Dothan, Alabama.

There are well-settled principles for the protection of the innocent that govern the framing of indictments, and if the courts ignore them in a case where it may appear that the conviction was just, it would destroy the protection that the law intends to afford the innocent.

If it were permitted to charge a person with aiding and assisting another in the commission of a crime in a cer-

tain county, and prove that his acts were committed in any State in the Union, it would be practically impossible for an accused person to prepare his defence. It places no additional burden, and works no hardship on the prosecution to require it to state the facts as they are, so that a defendant may be prepared to meet them, but if it be permitted to conceal the facts until the moment of proving them, the protection that the law governing criminal pleadings affords the innocent would be destroyed.

Mr. Bishop in the first volume of the Third Edition of his work on Criminal Procedure, Section 381, says: "Where the law allows an indictment in a county other than that in which the offence was committed, still 'all the facts,' says Chitty, 'should be laid in the county where they actually happened.'"

In 1 East's Pleas of the Crown, 343, the rule is thus laid down, "and where the stat. 2 & 3 Edw. 6, c. 24, the party is indicted in the county where the death happened, though the stroke were given in another, yet ought the stroke to be alleged in the county where it really was."

The stat. 2 & 3 Edw. 6, c. 24, which provides that in cases "of striking or poisoning in one county and death insuing in another the defendant may be indicted, tried and punished in the district where the death happened as if the whole crime had been perpetrated within its boundaries," is of similar import to the Florida statutes *cited supra*, except that ours extends the jurisdiction of all classes of offences.

In prosecutions under the English statute the rule with regard to the necessity of an indictment returned in one county to show that the wrongful acts were committed in

another is thus stated: "It may, in general, be observed, that in indictments founded upon the statutes we have already enumerated, which authorizes a mode, or place of trial, that did not exist at common law; all facts within the realm should be laid in the county where they actually happened. Thus, in case of murder, if the stroke or poison be given in one county, and the death occur in another, the facts should be stated according to their actual existence. And in prosecutions on the black act, which we have seen may be carried on in any county, it is usual to state the crime to have been committed in that where it actually occurred, though the venue be laid in any county. So, when an assault upon a revenue officer is tried in a foreign county, it should be laid in that where it took place." 1 Chitty's Cr. Law, 195.

Texas has a statute that provides that if any injury be received in one county and the person injured die in another county, the offence may be prosecuted in either. Under this statute one Chivarrio was charged in an indictmetn with murder committed in Webb County, the county in which the trial and conviction were had. Encinal was an organized county and by law for several years had been attached for judicial purposes to Webb County, and prosecutions for offences committed in Encinal, were conducted in Webb County. In the trial of the cause the court charged the jury: "You are instructed that the county of Encinal is attached to the county of Webb for judicial purposes. Therefore, if from the evidence you find that the crime of which the defendant stands accused was committed in Encinal county instead of the county of Webb, and you shall believe beyond a reasonable doubt from the evidence that the defendant was the person who committed it, the proof of the venue

will be sufficient to warrant you to find him guilty as charged in the indictment."

In discussing the propriety of this charge the court cited with approval that part of the section from Bishop's Criminal Procedure cited *supra.* This charge the court said was error and the judgment was reversed and the cause remanded, "that another indictment and another trial may be had in conformity with the facts in the case." Chivarrio v. State, 15 Tex. App. 330.

In the case of Mischer v. State, 41 Tex. Cr. Rep. 212, 53 S. W. Rep. 627, the constitutionality of a statute authorizing prosecutions "for rape to be commenced and carried on * * * in any county of the judicial district in which the offence was committed, or in any county of the judicial district the judge of which resides nearest to the county seat of the county in which the offence is committed," was sustained. The prisoner committed the rape in Colorado County, and the defendant was indicted, tried and convicted in Guadalupe County, on an indictment that stated the facts as they actually existed, by alleging that the rape was committed in Colorado County.

In passing upon the sufficiency of the indictment the court said: "Furthermore, in our opinion, it was properly alleged in the indictment, which was found and prepared by a grand jury of Guadalupe County, that the offence was committed in Colorado County."

The court recognized the distinction which we make here, that while our statute provides that the prosecution may be conducted in the same court and county in which the principal felon may be indicted and tried, although the offence of counseling, hiring, and procuring was com-

mitted without the limits of this State, that it does not provide that acts actually done by a person in another State may be laid in the indictment as having been performed in the county where the prosecution is carried on.

There is no analogy between the rule governing prosecutions for larceny and the one now under consideration. In the former it is well settled that "the possession of goods stolen by the thief is a larceny in every county into which he carried the goods, because the legal possession still remaining in the true owner, every moment's continuance, of the trespass and felony amounts in legal consideration to a new caption." 1 Chitty's Cr. Law. 179.

We think the charge requested by the defendant Eulie Russell should have been given, and the refusal to do so was harmful error.

The eighteenth assignment relates to the denial of the motion for a new trial. The only part of the motion not already discussed by us is that the verdict was not supported by the evidence. As to Elliott we consider the evidence of his guilt is clear and convincing. As the judgment against Russell is reversed on another ground, it is not necessary to pass on the sufficiency of the evidence against him.

We find no error in the record as to the defendant Robert Elliott, and the judgment against him is affirmed. The judgment against Eulie Russell is reversed.

TAYOR, WHITFIELD, ELLIS AND WEST, JJ., concur.