Albert A. Blinder, J.
This is a motion by the State of New York to dismiss a claim filed by one Isidore Zimmerman. The claimant cross-moves for an order permitting the claimant to examine the Clerk of the New York State Assembly, the Secretary of the Senate and the Counsel to the Governor.
The claimant, convicted of the crime of murder, first degree, was sentenced on April 22, 1938. In 1962, after the Court of Appeals, upon a coram nobis proceeding, set aside the conviction, and directed a new trial (People v. Zimmerman, 10 N Y 2d 430), the claimant was released. The indictment was subsequently dismissed in Supreme Court, New York County on March 13,1967.
Since the claim is founded in tort and a notice of intention to sue was not timely served and filed, it is clear that the Legislature must confer jurisdiction upon the court.
The jurisdiction for the claim herein is based upon Assembly Bill No. 2707 which was passed by the Assembly on May 4, 1971 and by the Senate on May 6, 1971. According to the journal of the Assembly, the bill was “ sent ” to the Governor on June 5,1971. It was ££ received ” by the Governor (according to the bill jacket) on the same date, which was one day prior to the conclusion sine die of the Legislature on June 6, 1971. Thereafter, on June 17, 1971, the Governor disapproved the bill. The Governor had twice before, in two previous years, vetoed similar bills introduced for the claimant.
The claimant argues that the bill was actually presented to the Governor prior to the aforesaid June 5 transmittal by the Clerk of the Assembly, by way of ‘£ delivery ’ ’ of the bill to the Governor’s counsel. The ££ delivery” is allegedly established by the fact that the Governor’s counsel sent a copy of the bill to the claimant with a form letter requesting ££ analysis, comments and recommendations ” concerning the bill, which letter was postmarked May 9, 1971. The sponsor also said he received a *195 copy of the bill from the Governor’s office prior to the June 5 date.
That the Governor’s counsel had a copy of the bill prior to its being sent by the Clerk of the Assembly to the Governor is not in question. The question is was such “ delivery ” a presentation under the Constitution which would require the Governor to veto it within 10 days?
Section 7 of article IV of the Constitution provides, inter alia: “ Every bill which shall have passed the senate and assembly shall, before it becomes a law, be presented to the governor; if he approve, he shall ¡sign it; but if not, he shall return it with his objections to the house in which it shall have originated, which shall enter the objections at large on the journal, and proceed to reconsider it. * * * If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the governor. No bill shall become a law after the final adjournment of the legislature, unless approved by the governor within thirty days after such adjournment ”.
The claimant contends that the fact that a member of the Governor’s staff had a copy of the bill after it passed both houses of the Legislature constitutes a presentation to the Governor under section 7 of article IV of the Constitution.
It is common knowledge, and the court takes judicial notice of the fact, that anyone may obtain a copy of any bill, introduced and printed, in either house, both prior to and after passage of the same, by mere request at the appropriate legislative clerk’s desk. Moreover, the court takes further judicial notice of the fact that various unofficial legislative services reproduce and distribute to subscribers copies of bills introduced in both houses within a day or two of such introduction, and daily distribution and dissemination of the daily proceedings of each house of the Legislature are obtainable by legislators and subscribers of the services available on the day following such proceedings.
That the Governor’s counsel obtained a copy of the bill in question, was aware of its passage in both houses and began to study it prior to its being formally presented to the Governor is a normal course of events and must be deemed highly desirable in the legislative process. Obtaining or receiving copies of a bill need not even be part of the Governor’s counsel’s official *196 duties — Ms examination of a bill in advance of formal presentation can only be construed as anticipation of such duties.
No public interest would be conserved by the requirement of hurried and inconsiderate examination of bills in the closing hours of a session, with the result that bills may be approved which on further consideration would be disapproved, or may fail although on such examination they might be found to deserve approval. (Edwards v. United States, 286 U. S. 482, 493, 494.) Section 8 of rule III of the Assembly, as amended January 11, 1971, provides that all Assembly bills when ordered to a third reading are sent to the Revision and Engrossing Clerk to be engrossed for final passage in the same form as the last printed copy thereof. All bills, when so engrossed, are then jacketed with the proper jurat for certification of final passage attached and thereafter delivered to the Index Clerk.
The compendium of procedure in the Assembly, found in The Clerk’s Manual of the Legislature (1967-1970), states (p. 421) that: “ A bill that has passed the Assembly is contained in an official jacket along with the proper jurat, certifying to the passage signed by the Speaker and is then transmitted to the Senate for consideration. ’ ’
The procedure in the Senate is similar. (Senate rule XVI, § 5.) After a Senate bill has been passed, it must be certified by the president, with the date thereof, the vote thereon and delivered to the secretary. (Senate rule IV, § 4.)
Section 40 of the Legislative Law similarly states that " no bills shall be deemed to have so passed unless certified in the manner provided by this section, which certificate to such effect shall be conclusive evidence thereof.” (See Rumsey v. New York & New England R. R. Co., 130 N. Y. 88, 92.) Thus, if an Assembly bill has been passed (and appropriately certified) in both houses, it is returned to the Assembly Clerk, who will conclude the formalities finally resulting in the bill being presented to the Governor.
The certified bill, then, is the only bill which could be “ presented to the Governor.” No other copy of the bill, even if the legislative journals indicated that the bill had been passed by' both houses, without amendment, could be “ presented ” without the aforesaid necessary formalities.* The Constitution clearly provides for it being “ presented ” and not information about *197 it being possessed. There is no ambiguity. The words of the Constitution must receive a reasonable interpretation considering the purpose for which they were intended by its framers. (Association for Protection of Adirondack v. MacDonald, 253 N. Y. 234.) The word “presented”, as used in section 7 of article IV of the Constitution, is a word having a distinct meaning and will not be extended by implication. (Cf. Adler v. Deegan, 251 N. Y. 467; Settle v. Van Evrea, 49 N. Y. 280.)
Requesting a decision that there could be constructive “ presentation ” by mere delivery of a copy of a bill which had not been formally “ presented ” would be, as Justice Blousteiit stated:
“ asking the court to rewrite the pertinent constitutional provisions by reading into them a further implied exception * * * The result would be to introduce a large measure of uncertainty and confusion into the law, and this court can find no basis or warrant for going beyond the actual wording of the constitutional limitations, which are obviously designed to provide a clear and definite yardstick for determining when a bill can become law without executive approval.
“ The further suggestion that a bill passed by the Legislature should be deemed to have been ‘ presented ’ to the Governor when the Governor is ‘ made aware ’ thereof, is also completely untenable.” (City of Rye v. Ronan, 67 Misc 2d 972, 975, 976, affd. 40 A D 2d 950.)
Another compelling reason for requiring formal presentation, for computation of the time within which the Governor must act, is that prior to such presentation, a bill that has passed both houses and which has not been ‘ delivered ’ ’ to the Governor may be called up and, after the vote has been reconsidered, may be amended and restored to- the third reading calendar. (The Clerk’s Manual of the Legislature [Procedure In Assembly], p. 417.)
The claimant’s contention that the bill was “ delivered,” and that as such, ‘ ‘ presentation ’ ’ occurred, when the bill was obtained by his aide or a representative or assistant thereof on or before May 9, 1971, is without merit. The court finds that the bill was not “ presented ” to the Governor until June 5,1971.
Since presentation of the bill occurred on June 5, 1971, and the Legislature adjourned sine die on June 6, 1971, the bill became a 30-day bill notwithstanding the fact that a copy thereof was physically stamped “ Ten-Day Bill.” The stamping of the bill was but a ministerial act by a party or parties unknown and could not be deemed an act involving the exercise of judg *198 ment "by the Legislature or the Governor. The Governor’s veto on June 17, 1971, was therefore timely under section 7 of article IV of the Constitution.
Just as it would be incorrect to add by a judicial determination a qualification of the power of the Governor to approve bills, which is not contained in the Constitution (People v. Bowen, 21 N. Y. 517, 520), it would likewise be incorrect so to qualify the Governor’s constitutional power to disapprove bills.
It is also alleged in claimant’s supporting papers that the Governor, unilaterally and without the Legislature’s express consent, had “ some arrangements ” whereby “ bills were not sent to him until requested by him. ’ ’ The only source for these allegations is an affidavit from the sponsor of the bill who said that he was told about them “ by the Clerk’s Office ”.
It is fundamental that the three departments of government, the Legislative, Executive and Judicial, are each separate and independent from the others. (Matter of Trustees of Vil. of Saratoga Springs v. Saratoga Gas, Elect. Light and Power Co., 191 N. Y. 123; Matter of Hassan v. Magistrates’ Ct. of City of N. Y., 20 Misc 2d 509, app. dsmd. 10 A D 2d 908, mot. dsmd. 8 N Y 2d 750, cert. den. 364 U. S. 844.) The powers which belong to any one of the three branches of government may not be exercised by either of the other two and can be performed only by the branch to which they belong. (Matter of Metz v. Maddox, 121 App. Div. 147,148; Beth Tomche Torah v. Howard, 16 Misc 2d 724, 725, 726.) This doctrine of .separation of powers must be respected by the courts. (Meyer v. Burns, 16 Misc 2d 252, 253.)
The legislative clerks are, by definition, employees of the Legislature, not the Executive Department. As Justice Bloustein stated in City of Rye v. Ronan (67 Misc 2d 972, 976, supra): ‘ ‘ The Legislature has ample means available to it, by control of its personnel and procedures, to insure that bills on which legislative action has been completed shall be promptly presented to the Governor, and there is no cause for judicial revision of the clear provisions of the Constitution for the alleged purpose of insuring such prompt presentation.”
When a bill is to be presented is a determination to be made by the Legislature. (Opinion of Justices, 106 N. H. 402; People ex rel. Petersen v. Hughes, 372 Ill. 602; 82 C. J. S., Statutes, § 48.) Furthermore, a reasonable time must be allowed after final passage of a bill for the mechanics of presentation to be carried out. (United States v. Pruitt, 121 F. Supp. 15, affd. 217 F. 2d 648, cert. den. 349 U. S. 907.)
*199 The court will not interfere with the Legislature by mandating a time for such presentation. To do so would be to usurp legislative prerogatives. It is not the province of the courts to direct the Legislature how to do its work. (See People ex rel. Hatch v. Reardon, 184 N. Y. 431, 442.) Moreover, the court takes judicial notice that there were no rules of the Assembly or of the Senate mandating the time within which a bill must be “ presented ” to the Governor within the constitutional framework, in 1971.
In any event, there is the general presumption that no official or person under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done. (Matter of Marcellus, 165 N. Y. 70, 77.) This presumption was not rebutted by anything credible contained in claimant’s supporting affidavits, and the allegations of “ arrangements ” are summarily rejected.
The claimant’s cross motion for examination of the Clerk of the Assembly, the Secretary of the Senate and the Counsel to the Governor is denied. Even if parol evidence were admissible to impeach the accuracy of the entries in the official legislative journals (City of Rye v. Ronan, 67 Misc. 972, 977, supra) the claimant does not claim any inaccuracies or ambiguities. (Cf. Franklin Nat. Bank of Long Is. v. Clark, 26 Misc 2d 724, 728, 745.)
The defendant’s motion to dismiss this claim is granted. The claimant’s cross motion is denied.

 The presentation of a Federal bill to the President also requires formal physical delivery of the enrolled bill. The date of presentation commences on the date noted on a legislative receipt and stamped on the enrolled bill by the White House. (Zinn, The Veto Power of the President, 12 F. R. D. 209, 222.)