BERCH, Chief Justice,
concurring in the result.
¶ 44 The Court concludes that the Arizona Constitution’s Presentment Clause requires the immediate presentment of bills to the Governor, allowing time only “to complete any ministerial tasks and otherwise effect their orderly transmittal.” Op. ¶ 38; see art. 4, pt. 2, § 12 (presentment clause). Because I conclude that the constitution requires only the transmittal of bills .within a reasonable time, I do not join in that portion of the majority opinion.
¶ 45 The Governor argues that the phrase “when finally passed” requires immediate transmittal; the Legislature maintains that it may transmit bills at its leisure. Both sides, in my opinion, overstate the ease.
¶ 46 The majority emphasizes the Presentment Clause phrase “when finally passed” in concluding that transmittal must occur immediately after completion of ministerial tasks. The clause itself does not specify the timing of presentment, but the context in which the phrase “when finally passed” is used suggests that it simply means “once” or “after.” See Kilpatrick v. Superior Court, 105 Ariz. 413, 419, 466 P.2d 18, 24 (1970) (requiring courts to construe the constitution as a whole and read its various provisions together). Section 12 provides in full as follows:
Every bill shall be read by sections on three different days, unless in case of emergency, two-thirds of either House deem it expedient to dispense with this rule. The vote on the final passage of any bill or joint resolution shall be taken by ayes and nays on roll call. Every measure when finally passed shall be presented to the Governor for his approval or disapproval.
The section thus sets forth the general procedure for enacting a bill into law: The bill must be read three times, unless the reading is waived, and then pass'ed by a roll call vote in each chamber. The “finally passed” bill must then be presented to the Governor, who may approve it or not. The section does not say when the presentment must occur, and it is plausible to conclude, as the majority has, that presentment must occur immediately. But given that the Framers did not explicitly require “prompt” or “immediate” presentation, it is more likely that the Framers intended presentment to occur within a reasonable time, but not necessarily immediately after final passage.
¶ 47 Several pieces of historical evidence support the conclusion that transmittal within a reasonable time is the appropriate standard. Sources contemporaneous with the drafting of Arizona’s Constitution show that the Framers likely understood the word “when” to be synonymous with “if’ or “on the condition that.” See Texas & P. Ry. Co. v. Beaird, 169 S.W. 1050, 1051 (Tex.Civ.App. 1914) (“ ‘[Wjhen presented[ ]’ ... is equivalent to ‘in case it is presented,’ or ‘on condition that it be presented.’ ”); see also Men-denhall v. State, 71 Fla. 552, 72 So. 202, 205 (1916) (“The word ‘when’ has a conditional concept in it, and as here used means ‘if.’ ”); Allen v. Powell, 65 Ind.App. 601, 115 N.E. 96, 99 (1917) (“[When] is frequently used in the sense of ‘provided,’ ‘in case of,’ ‘and if,’ or ‘if.’ ” (citation omitted)); Webster’s Revised Unabridged Dictionary 1644 (Noah Porter ed., 1913) (noting meaning as “at what time; at, during, or after the time that”). The Framers’ understanding of “when” as encompassing “after” and “if,” and their failure to include a term such as “forthwith,” “promptly,” or “immediately,” suggests that present *244 ment was to occur within a reasonable time after final passage of a bill. No language in the constitutional provision mandates immediate transmittal.
¶ 48 When a constitutional clause requires interpretation, we often look to the records of the constitutional convention for guidance. E.g., Cain v. Horne, 220 Ariz. 77, 82, ¶ 20, 202 P.3d 1178, 1183 (2009). Those records show that the provision compelling transmittal of a bill “when finally passed” originally required filing of the bill in the office of the secretary of state, presumably after it not only had passed each chamber of the Legislature, but also had been signed by the Governor or vetoed and overridden by the Legislature. See The Records of the Arizona Constitutional Convention of 1910, at 1040 (John S. Goff, ed.1991) [hereinafter “Records”] (Proposition 6 § 14 initially provided that “[e]very measure when finally passed shall be filed in the office of the secretary of state.”); id. at 1047 (replacing “secretary of state” with “office of the Governor”); id. at 583 (discussing the change from secretary of state to Governor). As so used, the phrase “when finally passed” clearly did not mean immediately after the roll call vote of ayes and nays in each chamber. The amendment from transmission to the secretary of state to transmission to the Governor demonstrates that the language “when finally passed” simply means “after” the bill’s passage.[3] The Framers never discussed and did not intend to add an immediate transmittal requirement. See id. at 583. The discussion focused on who should receive the bill, not when it should be transmitted. Nothing suggests that the provision was included to prevent delay in presentment. Id. at 853.
¶ 49 The conclusion that a reasonable presentment time was anticipated is further supported by the rules adopted by the First Legislature, several members of which served as delegates to the constitutional convention and therefore presumably understood the Framers’ intent.[4] Each chamber of the Legislature adopted a rule based on Article 4, Part 2, Section 12. Compare First Legislature of the State of Arizona, Rules of the House of Representatives, 15 (1912) (Rule 59) (noting constitutional basis for rule) [hereinafter First House Rules], and State of Arizona, Rules of the First State Senate 21 (1912) (Rule 21(4)) [hereinafter First Senate Rules], with Ariz. Const, art 4, pt. 2, § 12. Those rules allowed timely reconsideration of bills on which members had already voted. First House Rules 13 (Rule 48); First Senate Rules 17-18 (Rule 16). These reconsideration rules comport with the historical understanding that presentment need not occur immediately; a chamber may take a short but reasonable time after passing a bill to reconsider the wisdom of that act.
¶ 50 Every subsequent legislature has also permitted reconsideration of bills. For example, the Third Legislature entertained a motion for reconsideration on a bill that had already passed both houses. Third Legislature of the State of Arizona, Journal of the Senate 336, 338 (1917) (passing H.B. 4 without amendment, ordering its transmittal to the House, and then passing a motion for *245 reconsideration, amending the bill, and transmitting the amended bill to the House), in State of Arizona, Journals of the Arizona Legislature (1917). This historical evidence suggests that the Presentment Clause does not anticipate immediate transmittal because it would be inconsistent to require immediate presentment, yet allow the legislature discretion to reconsider a bill on which it had already affirmatively voted.
1151 The majority suggests that the absence of delay between the time the First Legislature passed bills and their transmittal to the Governor suggests that that body contemplated an immediate transmittal requirement. Perhaps. On the other hand, it may simply show that the First Legislature had no reason to delay transmission of those bills. The Legislature may choose to promptly present bills, even if doing so is not constitutionally compelled. In contrast to this course of practice, the Legislature presented evidence of twenty-five bills on which presentment was delayed, in most cases from three to four weeks. Although the majority dismisses this evidence because the Legislature did not show why the bills were delayed, see Op. ¶35, under the'majority’s analysis, if immediate presentment is constitutionally required, the motivation for the delay should not matter. If the Legislature lacks discretion to delay for any purpose, then any presentment that does not immediately follow prompt completion of ministerial tasks violates the constitution.
¶ 52 Because we generally respect our coordinate branches’ actions as constitutional unless a clear violation exists, Earhart v. Frohmiller, 65 Ariz. 221, 224-25, 178 P.2d 436, 438 (1947), we should not lightly find unconstitutional the actions of previous Legislatures and the acquiescence of previous Governors in those actions. On balance, the evidence of past Legislatures’ delay in presenting bills supports the current Legislature’s position that it has some constrained discretion to determine the timing of presentment.
¶ 53 Additionally, although the language of the constitutional presentment clauses across the nation vary, no court analyzing a provision with language similar to Arizona’s provision has found immediate transmission required. See Cenarrusa v. Andrus, 99 Idaho 404, 582 P.2d 1082, 1087 (1978) (“There is no provision in our Constitution governing the time within which the legislature must present bills to the governor, and it is not for this Court to impose any limitation as to time.”); Gilbert v. Gladden, 87 N.J. 275, 432 A.2d 1351, 1355 (1981) (A general presentment requirement does not “limit[ ] the time within which presentment may be accomplished.”); Campaign for Fiscal Equity, Inc. v. Marino, 87 N.Y.2d 235, 638 N.Y.S.2d 591, 661 N.E.2d 1372, 1373 (1995) (“[AJ bill which has passed both houses of the Legislature [must] be presented to the Governor for enactment into law or vetoing within a reasonable time after its passage.”); Zimmerman v. State, 76 Misc.2d 193, 348 N.Y.S.2d 727, 733 (Ct.Cl. 1973) (“When a bill is to be presented is a determination to be made by the Legislature.” (citing Opinion of the Justices, 106 N.H. 402, 213 A.2d 415 (1965)); State v. Heston, 137 W.Va. 375, 71 S.E.2d 481, 492 (1952) (The “section which requires every bill passed by the Legislature to be presented to the Governor before it becomes a law, prescribes no time within which it must be so presented.”) The Court’s opinion makes Arizona an outlier on this issue.
¶ 54’Finally, logic and practice support allowing a reasonable time for transmittal. The Governor has only five days to sign a bill while the legislature is in session or the bill will become law without her signature. Ariz. Const, art. 5, § 7. Some bills are very long and complex. Governors have a lot to do. Sometimes they are not available for short periods. As a session nears its conclusion, many bills may be passed within a short time. In such cases, a Governor might benefit from the courtesy of advance notice and delayed transmission of a bill. The rule the majority adopts does not allow for such cooperation and professional courtesy. Under the rule announced today, the legislature laeks discretion to delay presentment beyond the time needed to complete ministerial tasks, despite a Governor’s request for additional time or acquiescence in the delay.[5]
*246 ¶ 55 The majority criticizes allowing presentment within a reasonable time after final passage as a test lacking certainty. Op. ¶ 30. Yet as the majority itself recognizes, “[cjourts regularly assess the reasonableness of actions in many contexts.” Id. ¶ 20. We can assess reasonableness in this context as well. The reasonableness of any delay is tethered to the time of final passage by the constitutional requirement of presentment.
¶ 56 As with most standards, the contours for testing what constitutes a reasonable time would naturally develop as cases presenting the issue arose. Because the Court does not adopt this standard and because reasonableness must be determined in light of the context in which the question arises, there is little utility in engaging in the academic exercise of surmising, in the absence of context, how much time would be presumptively reasonable.
¶ 57 For the reasons expressed, I conclude that the Presentment Clause requires that bills that pass both houses be presented to the Governor within a reasonable time, but does not require immediate presentment.

. The records contain the following discussion, in which the framers also appear to use the terms "when” and "after” interchangeably:
Mr. Franklin: ... After a measure is passed by the legislature and signed by the governor, it is filed with the office of the secretary.
Mr. Webb: ... [A] bill after final passage is submitted to the governor for his approval or disapproval____
Mr. Webb: ... After final passage [a bill] is filed with the governor, and it is never returned and he files it with the secretary of state.
Mr. Winsor: ... [T]he procedure is that after a bill is finally passed by the legislature it is filed with the governor for his action____
Mr. Franklin: ... When the bill is passed by the legislature, it is submitted to the governor [and if it becomes law] it is then filed in the office of the secretary of state....
Id. (emphasis added) (using the terms “when” and "after” interchangeably); see also id. at 794, 799 (mentioning that the legislative presentment clause was included to indicate what happens to the bill "after passage”).

. Several convention delegates served in the legislature. Records at 1387-98. The first Speaker of the House and the first Senate President were each convention delegates, and each chaired the rules committee in his respective body. Id. at 1387, 1389; State of Arizona, Rules of the First State Senate, 2, 6 (1912); Journal of the First Legislature, Arizona House of Representatives, 17.

. I recognize that each chamber maintains control over when voting occurs and thus may, as a practical matter, inject delay into the process.