[Civil No. 2020.    Filed December 30, 1922.]

[211 Pac. 589.]

OLMSTED & GILLELEN, a Copartnership, Consisting of FRANK H. OLMSTED and FRANK GILLELEN, Appellants, v. O. A. HESLA, HOMER R. WOOD, WILLIAM LAWLER, J. W. STEWART, J. I. GARDNER, JOHN BIANCONI and JOHN H. ROBINSON; FRANK E. SMITH, as County Treasurer of Yavapai County, Arizona; B. H. SMITH, C. H. HOOKER, R. W. WINGFIELD, H. W. LEWIS and WINCHESTER DICKERSON, as Members of Yavapai County Highway Commission, and A. N. JONES, Secretary of Said Commission, Appellees.

HIGHWAYS—HIGHWAY COMMISSION OF YAVAPAI COUNTY HELD WITHOUT POWER TO ENTER INTO CERTAIN CONTRACT WITH ENGINEERS. The highway commission of Yavapai county, created by Laws of 1917, chapter 31, amended by Laws of 1919, chapters 2, 63, 121, for special purposes and with limited powers, could not enter into a contract with appellants as designing, consulting and supervising engineers covering the whole period of construction and improvement thereunder, basing their compensation on a certain percentage of road improvement bonds as such remuneration is not "compensation" to employees fixed by the commission under the law, and, as the performance of such contract extends beyond the terms of office of the present commissioners, it might be for and under different commissioners appointed, and, as their terms automatically terminate on completion of the highway program, it

would allow the engineers a possible commission on any unexpended balance of the bond issue after completion of such program.

APPEAL from a judgment of the Superior Court of the County of Yavapai. A. C. Lockwood, Judge. Affirmed.

Messrs. Norris & Norris, Messrs. Anderson, Gale & Nilsson and Mr. Robert McMurchie, for Appellants.

Mr. John A. Ellis, Messrs. O'Sullivan & Morgan and Mr. John L. Sullivan, for Appellees.

ROSS, C. J.—This action involves the power of the highway commission of Yavapai county, Arizona, to employ the appellants as designing, consulting and supervising engineers of the construction and improvement of the highways of the said county, authorized by an election held on May 8, 1920, at which bonds in the amount of $1,500,000 were voted to provide funds for such construction and improvement.

The contract employing appellants was entered into between them and the highway commission on June 16, 1921, covering the whole period of the construction and improvement contemplated, and obligated the highway commission to pay appellants for their services four per centum of the $1,500,000 voted, or $60,000, to be paid $2,500 upon the signing of the agreement, $2,500 each on the first day of August and September, 1921, and the remainder monthly *pro rata* as the construction work progressed.

The terms of office of four of the highway commissioners expired September 14th, and of the fifth September 17, 1921, three months after the date of the contract with appellants. It is conceded that the program of construction could not be completed in less than three years. It is obvious that unless the

members of the commission should be reappointed most of appellants' services as such engineers would be for and under a commission with an entirely different personnel.

The sole question being the power of the highway commission to enter into such contract upon a motion by the plaintiffs for judgment on the pleadings, the court ordered judgment, and thereby necessarily denied the existence of such power.

The law creating the office of the highway commission is found in chapter 31, Laws of 1917, amended by chapters 2, 63 and 121, Laws of 1919, and therein are prescribed the commission's powers and duties—powers and duties that had theretofore been conferred upon, and exercised by, the board of supervisors. The members of the highway commission are appointed by the supervisors for terms of two years. The power of appointment arises only after the board on its own motion, or through petition by fifteen per cent of the taxpayers of the county, has determined to submit the question of issuing bonds for the construction or improvement of the county highways. The terms of office of the commissioners automatically end for any one of the following reasons: (1) Failure of the bond issue to carry; (2) completion of the highway program voted; (3) when all the money arising from sale of bonds has been expended.

It is provided that the "commission shall have the powers and shall perform the duties hereinafter set forth." The first "duty" of the highway commission, which must be performed immediately upon their appointment, is to investigate all the county's public highways and the condition of those which in their judgment the greatest public necessity and convenience require to be constructed or improved, and to cause to be prepared maps thereof showing their

location, condition, connections, ascertain and determine which of the public highways should be improved, the kind of improvements, and procure an estimate of the costs of such improvement.

To assist the commission in determining the best material to be used, the best and most feasible manner of making such improvements, and to make all necessary surveys and prepare maps of the proposed construction or improvement, the commission is authorized to employ a competent engineer.

The second "duty" of the commission is to make a detailed report at least twenty days before the date fixed for bond election to the board of supervisors with suggestions and recommendations regarding the proposed construction or improvement accompanying the report with copies of map or maps and estimates of cost. This report, without being altered or modified, is required to be published by the board of supervisors at least two weeks before the bond election in a newspaper published in the county—six times if in a daily; twice if in a weekly. The call for bond election limits the improvement or construction to the report and maps made by the highway commission.

If the bond election carry and the bonds are sold, then other "duties" fall to the highway commission. It is provided, first, that "all work for which said bonds are issued shall be done under the supervision and direction of the highway commission"; second, the commission must determine the character of the work, prepare plans, specifications and profiles thereof, and thereupon advertise for bids, let contracts to lowest responsible bidder, fix contractors' bond and approve it, and, where the work to be done does not exceed $1,000, let it without calling for bids; may reject any and all bids and readvertise for bids for doing any or the whole of said work; and,

third, "said commission may employ a secretary and all necessary engineers, inspectors and superintendents to supervise the performance of such contracts or to have charge of the doing of said work, and shall fix their compensation." Section 8.

The "salary" of the commissioners is fixed at $10 per day, they are actually engaged, and they are forbidden any "further or additional compensation." It is provided that the expenses of the commission, traveling and others, actually and necessarily incurred in the discharge of their duties, as also those of the board of supervisors, shall be paid out of the general fund of the county, until there shall be sufficient money in the highway improvement fund, derived from the sale of bonds, with which to pay same, whereupon the general fund of the county shall be reimbursed from the highway improvement fund, and thereafter all expenses of the commission shall be paid out of the highway improvement fund. It is provided that any surplus remaining in the said fund after the completion of the work of improvement shall be passed into the general road fund of the county.

The commissioners are required to give bond to the county for the faithful performance of their duties in amounts fixed by the board of supervisors and approved by the board.

It is the contention of appellants that the commission in entering into the contract with them was acting as the agent of the county, in its proprietary, rather than in its governmental capacity, and that therefore the contract was one the commission had a right to make, regardless of the length of their terms of office, or the time required for its performance. We do not think the rule invoked has application to the facts and law of the present case. An analysis of chapter 31, Laws of 1917, and the amendments

thereof, *ex proprio vigore,* compels the conclusion that the highway commission was without power to execute the contract, not simply because its performance would extend beyond the terms of office of the commissioners, or because of the capacity in which they were acting, but largely because the law creating the commission, and prescribing its duties impliedly, if not in direct terms, makes the employees, such as "competent engineer," "secretary," "all necessary engineers," "inspectors," and "superintendents," servants or employees of such commission, and imposes the duty on the commission to fix their salary or compensation as such.

It must be borne in mind that the commission is a creature of the statute, created for a special purpose, with limited powers, and that it can exercise no powers not expressly or impliedly granted, and especially no powers expressly or impliedly forbidden. This proposition is so well understood as to need no citation of authorities. It will be observed that the word "contract" or "contracts," where used in the act, has reference to engagements entered into by the commission with contractors to do the actual work of construction or improvement. Where a contract for any part of the work exceeds $1,000, it can be let only, after advertising, to the lowest responsible bidder. It would be passing strange to conclude that the lawmaker would place this restriction and limitation upon the power of the commission to let contracts for work to be done in construction or improvement, and at the same time authorize the commission to enter into a contract agreeing to pay engineers to supervise the work the large sum of $30,000, without competitive bids. If the commission may lawfully enter into such a contract as the one we have before us, we discover no reason why they could not execute contracts with their secretary, in-

spectors and superintendents agreeing to pay them a percentage of the whole sum realized upon the bond issue. It will be noticed that the commission has been given authority to *employ* the help enumerated, whereas they enter into *contracts,* with persons to do the actual work of construction and improvement. The first expression carries the idea of employer and employee and the last the idea of contractor and contractee.

The commission is empowered to incur expenses in the performance of their duties, and to have them paid, before the bonds are sold, out of the general fund of the county, and, after the bonds are sold, out of the highway improvement fund. Among other expenses that they may incur pending the bond issue is the employment of a competent engineer to make necessary surveys, prepare map or maps, and to assist the commission in determining the best material to be used and the best and most feasible manner of making improvement and the cost thereof. The salary or compensation of such employee would be a necessary expense and properly payable out of the general fund of the county, to be reimbursed from the highway improvement fund, out of money realized from the sale of bonds. Likewise the compensation of the commissioners' secretary, necessary engineers, inspectors and superintendents, would be an expense necessarily incurred by the commission in the performance of their duties of supervising and directing all work for which bonds were issued.

The word "compensation" occurs in two places in the act and amendments thereto. In speaking of the commissioners and what they shall receive for their labors it is denominated a "salary of $10 per day" with "no further or additional compensation." Compensation here is used in the sense of salary. The word next occurs in connection with the re-

muneration to be paid the commissioners' secretary, all necessary engineers, inspectors and superintendents, and from the context we are forced to the conclusion that it is there used in the sense of salary.

It is said the commission "shall fix their compensation." But by awarding appellants the contract in question, the commission did not fix such compensation. Whether appellants would receive any compensation or not would depend upon whether they made a profit. If a profit was made, that would be their compensation. The profits of a contractor are always an unknown and an unknowable quantity. The compensation such employees are to receive under the law must be a fixed and definite sum, whether it be fixed before or after the employee enters the service of the commission. Suppose the case of an employee whose compensation had not been fixed or agreed upon, before he began working for the commission, and a dispute should arise as to the amount of his remuneration. Under the language of the statute there is but one authority to fix it, the commission, and it is doubtful if the courts would have any power to review the commission's determination. An applicant for employment might refuse to enter the service of the commission on the ground that the salary was too small, and might by persuasion or other considerations, such as efficiency or qualification, influence the fixing of the compensation, but after all, when it was once fixed, it would be under the statute the act of the commission.

In the Constitution compensation is employed to designate salary. Section 17, art. 4. The legislature likewise has often given it the same meaning. Paragraphs 3244, 3245, Civ. Code 1913; section 5, c. 162, Laws 1919. In 12 Corpus Juris, 231, is this statement:

"The word [compensation] also signifies the remuneration or wages given to an employee or officer. . . ."

Another thought that pervades the whole Road Improvement Act is that the highway commission shall have a free hand in laying out the work and doing it or seeing that it is done. The commissioners are required to execute bonds to the county, conditioned for the faithful performance of their duties, and of course for any breach of duty to the injury of the county would be liable thereon for damages. No such burden is exacted of their employees. The commission is required to prepare plans, specifications and profiles of the work to be done, and to supervise and direct all work paid for out of bond issue. These duties are made so personal as not to be shifted to contractors. True, the commissioners may not possess the professional skill or knowledge necessary to do some of the work, or may not have the time to look after the details of preparing plans, specifications and profiles, or to inspect or superintend the work, in which case they are authorized to employ help, but they are nevertheless responsible to the county for the work, and must necessarily vouch for the honesty and ability of their employees. Since that must be true, we think the commission that is in office while construction or improvement is being done should be allowed to select its own employees and servants, and that such is the intent and policy of the road improvement acts. Otherwise an incoming commission might be burdened with a corps of employees and servants unwilling or unfit to do the work, yet made responsible for their acts in connection with the work in hand. In 15 C. J. 542, section 234, it is stated:

" . . . The general rule is that contracts extending beyond the term of the existing board (county

board) and the employment of agents or servants of the county for such a period, thus tying the hands of the succeeding board and depriving the latter of their proper powers, are void as contrary to public policy, at least in the absence of a showing of necessity or good faith and public interest.''

See 22 R. C. L. 553, § 256; *State* v. *Layton,* 28 N. J. L. 244; *Eagan* v. *St. Paul,* 57 Minn. 1, 58 N. W. 267; *Board* v. *Taylor,* 123 Ind. 148, 7 L. R. A. 160, 23 N. E. 752.

Again, it is provided that upon the completion of the highway program voted the terms of office of the commissioners automatically end. The contract in question is incompatible with that provision, for it would allow the appellants a commission upon any unexpended balance of the bond issue after the completion of the program. It might be said that that would avoid the contract only *pro tanto.* But we think it goes farther and shows how improvident a contract of the kind might be.

The judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.