989 P.2d 751

**George F. RANDOLPH and Peter Kay, Petitioners.**

**v.**

**Hon. Jeff GROSCOST, Speaker of the Arizona House of Representatives, Hon. Brenda Burns, President of the Arizona Senate, and the State of Arizona, Respondents.**

**No. CV–99–0054–SA.**

Supreme Court of Arizona,
En Banc.

Dec. 17, 1999.

Barry J. Dale, Phoenix, Attorney for Petitioners.

Janet A. Napolitano, The Attorney General By Scott Bales, Solicitor General and Tim Delaney, Chief Deputy Attorney General and Mary Mangotich Grier, Assistant Attorney General Attorneys, Phoenix, for Respondents.

## O P I N I O N.

McGREGOR, Justice.

### I.

¶ 1  In November 1998, the Commission on Salaries for Elective State Officers (the Commission) recommended, and Arizona's electorate approved, Proposition 302, which raised legislative salaries to $24,000 per year and purported to change the method for setting legislators' per diem reimbursements. This case presents two related issues: (1) did the Commission exceed its authority when it recommended changes in the legislative per diem payments; and (2) if so, can we sever the per diem provision from the salary provision, or must we declare Proposition 302 invalid as a whole?  We hold that the Commission does not possess authority to recommend changes in legislative per diem payments, and that the per diem provision is, therefore, invalid.  We further hold that the invalid per diem provision can be severed from the remainder of the proposition, leaving the salary increase intact.

### A.

¶ 2  In 1970, Arizona voters amended the constitution to create the Commission on Salaries for Elective State Officers.  *See* ARIZ. CONST. art.  V, § 12 (West Supp.1999).  As part of its duties, the Commission bears sole responsibility and authority to recommend changes in legislative salaries.  The constitution directs that the Secretary of State, after certifying the Commission's recommendation, "shall submit to the qualified electors at the next regular general election the question, 'Shall the recommendations of the commission on salaries for elective State officers

concerning Legislative salaries be accepted? ☐ Yes ☐ No'." *Id.* The recommended salary increase becomes effective only if approved by the voters, and "legislative salaries may be altered only by the procedures established in this section" of the constitution. *Id.*

¶ 3  From 1971 until 1995, the Commission limited its recommendations to changes in legislative salaries.[1]  During that time period, the legislature established per diem reimbursements for its members by statute. *See* ARIZ.REV.STAT. ANN. (A.R.S.) § 41–1104 (West 1999).

¶ 4  In 1997, however, the Commission included with its recommendation that legislative salaries be increased a recommendation that legislators' per diem payments be the same as those provided for non-elective Arizona state employees, as defined in A.R.S. § 38–624 (West Supp.1999).[2]  Under the terms of section 41–1104, the legislature had authorized subsistence payments during the first 120 days of a regular session of $35 per day for Maricopa County legislators and $60 per day for non-Maricopa County legislators. After 120 days, the payments drop to $10 and $20, respectively. *See* A.R.S. § 41–1104. The per diem rate for non-elected state employees, in contrast, would make non-Maricopa County legislators eligible for a daily food allowance of $28 and up to $106 for lodging, and would make Maricopa County legislators ineligible for most reimbursements. *See* A.R.S. § 38–624.

¶ 5  In January 1999, respondents requested a formal opinion from the Arizona Attorney General as to whether the legislators should be paid per diem using the rate for non-elected state employees, as specified in Proposition 302, or the special rate for legislators contained in A.R.S. § 41–1104. The Attorney General concluded that the $24,000 per year salary provision in Proposition 302 was valid but that the per diem

reimbursement provision was not because the latter recommendation exceeded the Commission's authority. *See* Op. Att'y Gen. I99–001 (1999).  Based on the Attorney General's opinion, the legislators have been receiving a $24,000 per year salary pursuant to Proposition 302 and per diem payments pursuant to A.R.S. § 41–1104.

### B.

¶ 6  Petitioners challenged the legislature's action by filing this special action petition for writ of mandamus, arguing that the legislature is authorizing the illegal expenditure of state funds and that the legislature is obligated to enforce the per diem provision of Proposition 302. *Id.* We have original jurisdiction over mandamus, injunction, and other extraordinary writs to state officers and exercise that jurisdiction through the special action procedure.  Our decision to hear those matters, to accept jurisdiction, and to grant relief is highly discretionary. *See* ARIZ. CONST. art. VI, § 5.1. We accepted jurisdiction in this special action proceeding because the dispute involves a matter of substantial public importance, raises only issues of law, and requires the interpretation of a provision of the Arizona Constitution. *See Rios v. Symington,* 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992).

### II.

### A.

¶ 7  As we have noted, the Commission has plenary authority to recommend changes in legislative salaries to the electorate, but its authority extends only to salaries and rates of pay. *See* ARIZ. CONST. art. V, § 12.  For petitioners to succeed, they must establish that a per diem payment is a salary or rate of pay within the meaning of article V, section 12.  Because we hold that the

---

1.  See 1971 COMM'N ON SALARIES FOR ELECTED STATE OFFICIALS REP.; 1973 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1977 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1980 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1981 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1985 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1987 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1989 COMM'N ON SALARIES FOR

ELECTIVE STATE OFFICERS REP.; 1991 COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS REP.; 1993 REP. OF THE COMM'N ON SALARIES FOR STATE ELECTIVE OFFICERS; 1995 REP. OF THE COMM'N ON SALARIES FOR STATE ELECTIVE OFFICERS.

2.  1997 REP. TO THE COMM'N ON SALARIES FOR ELECTIVE STATE OFFICERS.

current legislative per diem is not a salary or rate of pay within the meaning of the constitution, we reject petitioners' first argument.

¶ 8  This Court has previously considered the relationship between per diem payments and salary.  In *Earhart v. Frohmiller,* 65 Ariz. 221, 178 P.2d 436 (1947), we decided whether "granting to the legislators an allowance for subsistence and lodging constitutes an improper increase in their compensation." *Id.* at 225, 178 P.2d at 438.  Noting that we had stated, in *Olmsted & Gillelen v. Hesla,* 24 Ariz. 546, 553, 211 P. 589, 591 (1922), that "[i]n the Constitution compensation is employed to designate salary," we rejected the petitioners' argument that legislators could not recover the per diem payments.  We concluded that "[w]hen the State repays the legislators and their employees for personal expenses, this does not constitute additional compensation but is merely a reimbursement for actual cash outlays necessarily incurred for subsistence while away from home and in the performance of duty." *Earhart* at 226, 178 P.2d at 438; *see also Geyso v. City of Cudahy,* 34 Wis.2d 476, 149 N.W.2d 611, 614–15 (1967) (holding that "[t]he words salary and expense are separate and distinct terms which connote entirely different concepts.  Salary is a fixed periodical compensation paid for services rendered whereas an expense is a charge incurred in performing those services.").

### B.

¶ 9  Although petitioners seek to distinguish *Earhart,* we do not find their arguments persuasive.  Petitioners first argue *Earhart* does not apply because it was decided before Arizona adopted article V, section 12.  The principles on which we based our decision in *Earhart,* however, remain valid.  The question there, as here, was whether the constitution, in referring to salaries or rates of pay, refers also to per diem payments.  If per diem payments are not salary or compensation, as we· decided in *Earhart,* then the Commission's authority does not extend to recommending changes in per diem payments.

¶ 10  Petitioners also attempt to distinguish *Earhart* by noting that the statute therein "provide[d] only for actual and neces-sary expenses for subsistence and lodging to the extent that these are supported by receipts and vouchers." *Earhart,* 65 Ariz. at 226, 178 P.2d at 439.  Their argument seems to be that a set, or "flat," per diem rate, like that established by A.R.S. § 41–1104, constitutes a rate of pay or salary and, therefore, acts as a hidden form of compensation.  Other jurisdictions have directly rejected that argument.  In *Eberle v. Nielson,* 78 Idaho 572, 306 P.2d 1083, 1088 (1957), for instance, the court held that a statute permitting legislators to recover set per diem payments for time spent on committee work did not violate the constitutional provision that established legislative salaries and per diem payments for time spent during the legislative session.  Furthermore, in *Collins v. Riley,* 24 Cal.2d 912, 152 P.2d 169, 172 (1944), the California Supreme Court held that a flat per diem rate does not constitute additional compensation.

¶ 11  We agree that a set per diem rate, so long as it is reasonably related to actual expenses incurred, does not constitute a salary.  Petitioners do not claim that the per diem schedules set by the legislature in section 41–1104 fall outside reasonable limits.  Moreover, as we noted in *Earhart,* if the legislature abuses its authority in setting per diem reimbursements, the voters are not without recourse.  They retain authority to replace those representatives whom they perceive are misusing their power in setting reimbursement rates.  They also have power, through the initiative process, to enact acceptable reimbursement rates.  *See* ARIZ. CONST. art. IV, part 1, § 1(2).

¶ 12  Because the Commission's authority is limited to recommending changes in legislative salaries or rates of pay, and because the per diem at issue does not constitute a salary, the Commission lacked authority to recommend changes in the legislative per diem rate.  That portion of Proposition 302 referring to per diem payments is therefore invalid, and we next consider whether the invalid portion can be severed from the valid portion increasing legislative salaries.

### III.

#### A.

¶ 13  Petitioners argue that if the· Commission exceeded its authority, we

should declare the entire proposition void. We will not, however, declare an entire statute "unconstitutional if the constitutional portions of the statute can be separated from that which is unconstitutional." *State v. Prentiss,* 163 Ariz. 81, 86, 786 P.2d 932, 937 (1989). "This court on numerous occasions has held that if part of an act is unconstitutional and by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance left intact." *State v. Coursey,* 71 Ariz. 227, 236, 225 P.2d 713, 719 (1950).

¶ 14  To determine whether to sever the invalid from the valid portion of an act, we have long applied a test under which we consider several factors. We first consider whether that portion of an act remaining after we sever the invalid portion is independent of the invalid part and enforceable standing alone. *See McCune v. City of Phoenix,* 83 Ariz. 98, 106, 317 P.2d 537, 542 (1957). If the remaining portion can stand alone, we will enforce it

> "if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act."

*State ex rel. Napolitano v. Brown,* 194 Ariz. 340, 344, 982 P.2d 815, 819 (1999) (quoting *State Compensation Fund v. Symington,* 174 Ariz. 188, 195, 848 P.2d 273, 280 (1993)).

¶ 15  Applying the latter part of the severability test in a disciplined manner to enactments adopted by the voters, however, proves to be a nearly impossible task. When we consider whether the legislature would have adopted the valid portion of a statute absent the invalid portion, we can look to the statute's legislative history. *See Hull v. Albrecht,* 192 Ariz. 34, 39–40, 960 P.2d 634, 639-40 (1998). When the voters approve a measure, however, we have no legislative history to guide us in discerning voter intent. Indeed, each voter's intent may be distinct from that of other voters. For that reason, in deciding whether to sever the invalid portion of a measure adopted by popular vote and uphold the remaining, valid portion, we will apply the following test. We will first consider whether the valid portion, considered separately, can operate independently and is enforceable and workable. If it is, we will uphold it unless doing so would produce a result so irrational or absurd as to compel the conclusion that an informed electorate would not have adopted one portion without the other. We now apply that test to Proposition 302.

## B.

¶ 16  In keeping with required constitutional language, Proposition 302 posed the following question to voters: " 'Shall the recommendations of the commission on salaries for elective state officers concerning legislative salaries be accepted? ☐ Yes ☐ No'." The recommendation, also printed on the ballot, stated: "Each state legislator shall be paid $24,000 per annum, and as further compensation, per diem reimbursement commensurate with and as provided by law for non-elective Arizona state employees."

¶ 17  On its face, Proposition 302 addresses two separate subjects, salary *and further compensation* in the form of per diem payments, and gives no indication that the two types of payment are dependent on one another. Statements in the publicity pamphlet distributed by the Secretary of State also treat the two provisions as independent.[3] The Commission's statement supporting its recommendation separates the two proposals, explaining in its first paragraph that the Commission "unanimously voted to increase the annual compensation of state legislators from $15,000 to $24,000." In the second paragraph, the Commission explains that it *"also unanimously recommended* the voters approve the same per diem reimbursement for legislators as received by the non elective Arizona state public employees." (Emphasis added.) The pamphlet set out three statements in support

---

**3.** See BETSY BAYLESS, SECRETARY OF STATE, 1998 BALLOT PROPOSITIONS FOR THE GENERAL ELECTION OF NOVEMBER 3, 1998 at 159–62 (1998).

of Proposition 302,[4] and all refer only to the need for raising legislative salaries from what one statement described as "the starvation wage of $15,000." None of the statements refers to the per diem provision.

¶ 18 The recommendation that each legislator be paid $24,000 per year, considered separately, therefore can operate independently of the per diem provision and is workable and enforceable standing alone. Moreover, enforcing the salary provision of Proposition 302 does not lead to an absurd or irrational result. To the contrary, enforcing the salary provision permits us to give effect to that portion of Proposition 302 that comports with the Commission's traditional approach.

¶ 19 Therefore, we sever the per diem provision and uphold the salary provision.

## IV.

¶ 20 Petitioners have requested attorney's fees pursuant to A.R.S. § 12–2030 (West Supp.1999), which provides for the award of fees in a mandamus action against the state or any political subdivision thereof. Because petitioners are not the prevailing parties, and without considering whether the statute applies, we decline their request.

## V.

¶ 21 For the foregoing reasons, we deny petitioners relief.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice-Chief Justice, STANLEY G. FELDMAN, Justice and FREDERICK J. MARTONE, Justice.

---

**4.** The Secretary of State received no arguments opposing Proposition 302.