SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| JANICE K. BREWER, Governor of the State of Arizona, in her official capacity, | ) ) ) ) | Arizona Supreme Court No. CV-09-0168-SA |
| Petitioner, | ) ) | |
| v. | ) ) | |
| ROBERT BURNS, individually and as President, Arizona State Senate; KIRK ADAMS, individually and as Speaker, Arizona House of Representatives; The ARIZONA STATE SENATE; The ARIZONA HOUSE OF REPRESENTATIVES; and CHARMION BILLINGTON, individually and as Secretary of the Arizona State Senate, | ) ) ) ) ) ) ) ) ) ) ) | **O P I N I O N** |
| Respondents. | ) ) ) | |

Special Action

**JURISDICTION ACCEPTED; RELIEF DENIED**

_____

OFFICE OF THE GOVERNOR                                              Phoenix
    By   Joseph A. Kanefield, General Counsel
         Vanessa Hickman, Deputy General Counsel
Attorneys for Janice K. Brewer

CANTELME & BROWN, P.L.C.                                            Phoenix
    By   David J. Cantelme
         D. Aaron Brown
         Paul R. Neil
         Samuel Saks
Attorneys for Robert Burns, Kirk Adams, the Arizona House of
Representatives, the Arizona State Senate, and Charmion
Billington

_____

**B A L E S**, Justice

¶1      Because Arizona's constitution directs that "[e]very measure when finally passed shall be presented to the governor for [her] approval or disapproval," art. 4, pt. 2, § 12, this Court ruled on June 23, 2009, that the Respondents (collectively, the "Legislature") cannot pass bills and then withhold them to prevent the Governor from exercising her power to approve or veto legislation.  Given the unusual circumstances of this case, however, we also declined to order the Legislature to immediately present the Governor the budget bills at issue here.  This opinion explains our earlier order.

**I.**

¶2      This litigation arises from a dispute between the Governor and the Legislature regarding the state budget for the 2010 fiscal year.

¶3      On June 4, 2009, the Arizona Senate passed, by a simple majority vote, several appropriations bills: Senate Bills 1027, 1028, 1029, 1031, 1035, 1036, 1145, 1187, 1188, and 1258 (collectively, the "Budget Bills").  After passage, the Senate President, Robert Burns, signed the engrossed version of the bills in open session and ordered the bills transmitted to the Arizona House of Representatives, which passed the bills that day.  Upon signing the bills, Kirk Adams, Speaker of the House of Representatives, directed the Chief Clerk to return them to

2

the Senate.

¶4 Governor Janice K. Brewer publicly announced her opposition to the Budget Bills and her intent to veto them at least in part. The Legislature, however, declined to present them to her. On June 15, 2009, the Governor delivered a letter to President Burns and Speaker Adams requesting that they present the Budget Bills to her by 5:00 p.m. that day. They responded that the bills would be presented during the legislative session, but it would be "premature" to transmit them before the Legislature and Governor had reached agreement on a budget.

¶5 The next day, the Governor filed a petition for special action asking this Court to order the Legislature to present the Budget Bills to her without further delay. After expedited briefing, this Court heard oral argument on June 23, 2009.

## II.

¶6 Both the Legislature and the Governor candidly acknowledge that their disagreement over the timing of the presentment of the Budget Bills reflects an effort by each branch to enhance its position in ongoing budget negotiations. The enactment of a budget often involves political disagreement, bargaining, and compromise. Because this Court is reluctant to enter the arena of political disputes between the executive and

3

legislative branches, we first consider whether the issue presented is proper for judicial resolution.

## A. Jurisdiction

¶7 Article 6, Section 5(1) of the Arizona Constitution grants this Court original jurisdiction over "mandamus, injunction and other extraordinary writs to State officers." We exercise this jurisdiction through the special action procedure, but our decision to accept jurisdiction is "highly discretionary." *Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485 ¶¶ 10-11, 143 P.3d 1023, 1026 (2006); *Randolph v. Groscost*, 195 Ariz. 423, 425 ¶ 6, 989 P.2d 751, 753 (1999).

¶8 This case warrants the exercise of our special action jurisdiction. The key issue is whether our constitution allows the Legislature to pass bills, but then refuse for political reasons to present them to the Governor for her veto or approval. We accepted jurisdiction because the two political branches have a good faith dispute over their respective powers in the lawmaking process and the issue is of first impression and statewide importance. *See Forty-Seventh Legislature*, 213 Ariz. at 485-86 ¶ 11, 143 P.3d at 1026-27; *Randolph*, 195 Ariz. at 425 ¶ 6, 989 P.2d at 753.

¶9 The Legislature argues that even if special action jurisdiction is appropriate, the Governor should have instead filed this action in the superior court because there are

4

"intense fact questions." We disagree. The relevant facts are undisputed; the merits of this case turn on the meaning of a constitutional provision. In light of the parties involved, the issue, and the timing of this dispute in relation to the enactment of a budget, special action relief was properly sought from this Court. *See League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558 ¶ 4, 201 P.3d 517, 519 (2009).

### B. Standing and Ripeness

¶10     The Legislature also argues that the Governor lacks standing and the dispute is not ripe for judicial resolution.

¶11     Although "we are not constitutionally constrained to decline jurisdiction based on lack of standing," *Sears v. Hull*, 192 Ariz. 65, 71 ¶ 24, 961 P.2d 1013, 1019 (1998), "[c]oncern over standing is particularly acute" when this Court is asked, in effect, to referee disputes between the political branches. *See Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 20, 81 P.3d 311, 316 (2003) ("Without the standing requirement, the judicial branch would be too easily coerced into resolving political disputes between the executive and legislative branches, an arena in which courts are naturally reluctant to intrude.").

¶12     To have standing, a party generally must allege a particularized injury that would be remediable by judicial decision. *See id*. at ¶¶ 18, 22. The Governor contends that she has standing because the Legislature's refusal to present her

with finally passed bills violates the constitutionally established procedure for lawmaking and undermines her express authority to veto or approve bills. *See* Ariz. Const. art. 4, pt. 2, § 12; art. 5, § 7.

¶13 The Legislature, in contrast, argues that the Governor's constitutional power to veto or approve a bill is not triggered until it is presented to her, and therefore she cannot complain of any constitutional injury based on the Legislature's refusal to present the bills.

¶14 The Governor has the better argument on standing. If she is correct that the Legislature has violated the constitution by withholding finally passed bills from her review, then she has sustained a direct injury to her constitutional authority. *Cf. Forty-Seventh Legislature*, 213 Ariz. at 487 ¶ 15, 143 P.3d at 1028 (finding that Legislature had standing to challenge alleged unconstitutional exercise of line-item veto). The Legislature's standing arguments presume that the Legislature is correct on the merits, that is, that the Legislature can, at its discretion, withhold finally passed bills from the Governor and thus she has sustained no injury. Our standing analysis, however, looks to whether the petitioner has plausibly *alleged* particularized injury as a precondition to the Court's deciding the merits; defendants cannot defeat standing merely by assuming they will ultimately win.

¶15    The Legislature similarly argues that the Governor's lawsuit is not ripe because when this case was submitted for decision, the Legislature was still in session and the Governor is not entitled to the presentment of finally passed bills before the Legislature adjourns.  The Legislature cites *Campaign for Fiscal Equity, Inc. v. Marino*, which held that because the New York Constitution implicitly requires the presentment of bills within a "reasonable time," the New York Legislature could not adjourn without transmitting bills it had passed.  661 N.E.2d 1372, 1374 (N.Y. 1995).  The Legislature's argument here again goes more to the merits than to ripeness.  The Governor argues that the constitution requires transmittal of a bill once it has finally been passed, even if the Legislature has not yet adjourned.  If the Governor is correct in her interpretation of the constitution, she suffered a constitutional injury.

## C.   Justiciability

¶16    The Legislature finally argues that this case presents a nonjusticiable political question.  Even if a case is within a court's subject matter jurisdiction and is timely brought by a party with standing, a court should abstain from judicial review of the merits if the issue is properly decided by one of the "political branches" of government.  *Kromko v. Ariz. Bd. of Regents*, 216 Ariz. 190, 192-93 ¶¶ 11-12, 165 P.3d 168, 170-71 (2007).

¶17    The fact that a lawsuit involves a disagreement between the political branches does not necessarily mean that it presents a political question. *See INS v. Chadha*, 462 U.S. 919, 942-43 (1983) (noting that "the presence of constitutional issues with significant political overtones does not automatically invoke the political question doctrine"); *Baker v. Carr*, 369 U.S. 186, 217 (1962) (observing that doctrine concerns "political questions" rather than "political cases"). A controversy only presents a nonjusticiable political question if it involves "a textually demonstrable constitutional commitment of the issue to a coordinate political department" or lacks "judicially discoverable and manageable standards" for its resolution. *Kromko*, 216 Ariz. at 192 ¶ 11, 165 P.3d at 170 (internal quotation marks omitted); *see also Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026.

¶18    The Legislature first argues that the Arizona Constitution allows it to determine the timing of presentment of bills to the Governor because Article 4, Part 2, Section 8 states that each house shall "determine its own rules of procedure." This provision, however, cannot limit or otherwise qualify the directive in Article 4, Part 2, Section 12 that "[e]very measure when finally passed shall be presented to the Governor." Section 12 does not by its terms commit to the Legislature the decision on the timing of presentment of finally

8

passed bills.

¶**19**    The Legislature alternatively argues that there are no judicially identifiable and manageable standards for determining how promptly the Legislature must present bills to the Governor. But this argument also presumes a particular resolution of the merits.   The Legislature contends that if it does not have unfettered discretion to determine when to present bills to the Governor, then the only alternative is for courts to assess whether the Legislature has acted "reasonably" in delaying presentment, and this inquiry is inherently subjective and political.

¶**20**    We also reject this argument.  Courts regularly assess the reasonableness of actions in many contexts, ranging from searches and seizures to the enforceability of contractual terms.   Perhaps even more importantly, resolving this case on the merits does not necessarily imply that courts will need to assess on a case-by-case basis whether the Legislature has "reasonably" decided to delay presentment.   The Governor's argument is that the constitution might instead simply require presentment when bills are finally passed, with only such delay as might reasonably be required for the Legislature to complete the ministerial tasks of signing the bills and arranging for formal transmittal.

¶**21**    The issue here is not whether the Legislature should

9

include particular items in a budget or enact particular legislation. Such issues, like the Governor's decision whether to veto or approve a bill or the Legislature's decision whether to attempt an override, clearly are political questions. *Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026. Instead, this case concerns the respective powers of the Legislature and the Governor once the Legislature has finally passed a bill.

¶22 Rather than concern a political question, this issue is one of law and appropriate for judicial resolution. As we noted in a case in which a legislature challenged a governor's actions in the lawmaking process: "To determine whether a branch of state government has exceeded the powers granted by the Arizona Constitution requires that we construe the language of the constitution and declare what the constitution requires. Such questions traditionally fall to the courts to resolve." *Id.* at ¶ 8.

## III.

¶23 We accordingly turn to the merits. Arizona's constitution details the procedure for final passage of bills by stating that every bill shall be read three times, except in cases of emergency, that "[t]he vote on the final passage of any bill . . . shall be taken by ayes and nays on roll call," art. 4, pt. 2, § 12, and that "[a] majority of all members elected to

10

each house shall be necessary to pass any bill," *id.* § 15. Once these steps are completed, a bill is "finally passed" for purposes of Section 12. *See Cox v. Stults Eagle Drug Co.*, 42 Ariz. 1, 4-5, 21 P.2d 914, 915 (1933) (noting that "final passage" occurs when each house has approved bill in the same form, as "there is nothing further for either of them to do with it to complete it"), *overruled on other grounds by State ex rel. La Prade v. Cox*, 43 Ariz. 174, 30 P.2d 825 (1934).

¶24    After a bill is finally passed, both the constitution and the legislative rules contemplate the completion of certain ministerial tasks before it is presented to the Governor. The presiding officer of each house must sign all passed bills in open session. Ariz. Const. art. 4, pt. 2, § 15. The Senate has designated its Secretary as the custodian of bills, Arizona Senate Rule 3(B) (2009-10), and the House has provided that its Chief Clerk shall be responsible for transmitting bills. Arizona House of Representatives Rule 5 (2009-10). Thus, these officers also have ministerial responsibilities in transmitting finally passed bills to the Governor.

¶25    The Budget Bills were finally passed by the Legislature on June 4, 2009, so the dispute among the parties concerns solely the timing of their delivery to the Governor. The constitution declares that "[e]very measure when finally passed shall be presented to the governor for [her] approval or

11

disapproval." Ariz. Const. art. 4, pt. 2, § 12. The Governor argues that the constitution requires such bills to be delivered to her with only such delay as may be reasonably necessary to complete ministerial acts related to transmittal. The Legislature first argued that it could delay presentment of finally passed bills at its discretion or, alternatively, could at least wait until the end of a legislative session. After this Court announced its ruling, the Legislature filed a motion for reconsideration arguing instead that it should be allowed to delay presentment for some "reasonable time."

¶26    The "Constitution should be construed so as to ascertain and give effect to the intent and purpose of the framers and the people who adopted it." *State ex rel. Morrison v. Nabours*, 79 Ariz. 240, 245, 286 P.2d 752, 755 (1955). We give effect "to the purpose indicated, by a fair interpretation of the language used, and unless the context suggests otherwise words are to be given their natural, obvious and ordinary meaning." *Id.*

¶27    In ordinary usage, the phrase "when finally passed" would be understood to mean upon final passage and not at whatever later time the Legislature might deem appropriate. Dictionary definitions of "when," both contemporary and historical, signal a point in time related to the occurrence of a specific event. *See, e.g.,* Webster's II New College

Dictionary 1286 (3d ed. 2005) (defining "when" as "at which time" or "[a]s soon as"); 2 A Standard Dictionary of the English Language 2055 (N.Y., Funk & Wagnalls Co. 1895) (defining "when" as "[a]t which or what time" or "[a]fter that; as soon as"). Because nothing in the constitution indicates a different meaning, we construe the use of "when" to require presentment upon final passage of a bill. The use of "shall" further underscores the mandatory nature of the Presentment Clause. *See* Ariz. Const. art. 2, § 32 ("The provisions of th[e] Constitution are mandatory, unless by express words they are declared to be otherwise.").[1]

---

[1] At the 1910 Constitutional Convention, delegates offered various proposals suggesting language about presentment. As the concurrence notes, Proposition 6, Section 14 stated that bills "when finally passed" would be filed with the secretary of state, but this language was replaced by Substitute Proposition 6, which provided in Section 12 that such bills would be filed with the Governor. The Records of the Arizona Constitutional Convention of 1910, at 1047 (John S. Goff, ed. 1991) [hereinafter "Records"]. After further amendments, Section 12 of Substitute Proposition 6 became the basis for Article 2, Part 2, Section 12. *Id.* at 584, 799. The concurrence concludes that "[t]he amendment from transmission to the secretary of state to transmission to the Governor demonstrates that the language 'when finally passed' simply means 'after' the bill's passage." *See* ¶ 47, *infra*.

We interpret the history of Section 12 differently. That the provision initially contemplated transmittal to the secretary of state rather than the Governor suggests that the Framers viewed post-passage transmittal as a ministerial act. Nothing in the records of the Convention indicates that Section 12 was intended to give the legislature discretion to delay presentment to the Governor. Finally, Section 12 must be

13

¶28 The constitution, as the Governor acknowledges, cannot practically be interpreted to require presentment immediately when a bill receives the required approval by each house. We interpret the language directing that presentment "shall" occur for bills "when finally passed" to allow such time as may reasonably be necessary to complete ministerial acts such as the signing of the bill by the presiding officer and other tasks to effect the transmittal to the Governor. *Cf. State ex rel. Berger v. McCarthy*, 113 Ariz. 161, 163, 548 P.2d 1158, 1160 (1976) (noting that statutory directive that action "shall" be done contemplates performance within period which will promote

---

considered against the backdrop of the Framers' approval of Article 5, Section 7.

On the afternoon of November 30, 1910, the Convention approved Substitute Proposition 33, which concerned the executive branch and became the basis for Article 5. Records at 794, 1365. Section 7 of Substitute Proposition 33 provided that "[e]very bill passed by the legislature, before it becomes a law, shall be presented to the governor." *Id.* at 1128. Later that day, the Convention again considered Substitute Proposition 6, and Mr. Winsor successfully moved to amend Section 12 to replace the language "sent to the governor" with the phrase "presented to the Governor for his approval or rejection." *Id.* at 799.

The concurrence interprets Section 12 in a way that makes it redundant to Article 5, Section 7, which itself requires presentment after passage. Mr. Winsor, however, specifically stated that his proposed change to Section 12 had independent force: "This particular provision is for the disposition of the bill after it is passed, and there is no other provision covering this point anywhere in any proposition." Records at 799.

14

prompt and orderly conduct of the proceedings).  We are confident that the Legislature can expeditiously transmit finally passed bills to the Governor and that litigation will not be necessary or appropriate regarding relatively short delays in presentment to complete ministerial tasks and orderly delivery.

¶29     We reject, however, the Legislature's alternative argument that it should be allowed to "reasonably" delay presentment on a more open-ended basis, and that this Court should "leave the determination of what is reasonable to the Legislature's discretion."  Such an amorphous standard would vitiate the constitutional directive that presentment occur "when" bills are finally passed.

¶30     Nor are we persuaded by the concurrence's suggestion that the Legislature should be allowed to delay presentment for a "reasonable time" beyond that reasonably required for the orderly transmittal of bills.  Even under this test, the Legislature could not delay presentment indefinitely, *see* ¶¶ 43, 54, *infra*, and the concurrence evidently concludes that the Legislature unreasonably withheld the Budget Bills here, *see* ¶¶ 43-44, *infra*.  But the concurrence does not explain how courts are to assess if a delay is reasonable.  Because this standard is not tethered to the time needed to complete orderly delivery, it would undesirably require courts to make subjective, ad hoc

15

evaluations of the Legislature's delay in transmitting bills.

¶31     The Legislature also argues that other state courts, in construing presentment clauses that lack any specified time requirement, have not interpreted their constitutions as requiring prompt presentment of bills to the governor. *See, e.g., Cenarrusa v. Andrus*, 582 P.2d 1082, 1087 (Idaho 1978). Many state constitutions say nothing about the timing of presentment other than indicating it must occur sometime after passage. *See, e.g.*, Ala. Const. art. 5, § 125 ("Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor."); Idaho Const. art. 4, § 10 ("Every bill passed by the legislature shall, before it becomes a law, be presented to the governor . . . .").

¶32     Arizona's constitution, in contrast, specifies that measures shall be presented "when finally passed." Thus, we are not persuaded by the out-of-state cases cited by the Legislature. We also note that some state courts have concluded that legislatures do not have unlimited discretion to withhold bills, although these courts were also interpreting constitutional language that differs from Arizona's. *See Campaign for Fiscal Equity*, 661 N.E.2d at 1373 (construing New York's constitution as implicitly requiring presentment within a reasonable time after passage); *State ex rel. Ohio Gen. Assembly*

16

*v. Brunner*, 872 N.E.2d 912, 924 (Ohio 2007) (stating that Ohio Constitution, by use of term forthwith, requires presentment promptly).

¶33     The Legislature also contends that requiring presentment upon final passage would be inconsistent with legislative practices dating from early statehood. Long-established practices, accepted by other branches of government, may be relevant in construing constitutional provisions. *See, e.g., Stuart v. Laird,* 5 U.S. (1 Cranch) 299, 309 (1803) (propriety of requiring justices to sit as circuit judges established by "practice and acquiescence . . . commencing with the organization of the judicial system"). In this regard, the Legislature argues that its own rules, both as adopted by the First Legislature and currently, contemplate that the Legislature may reconsider bills after final passage, and that past legislatures have sometimes held bills for days or even weeks.

¶34     Neither the current rules nor the rules of the First Legislature specifically address the reconsideration of finally passed bills. Instead, the current rules more generally provide that each house may reconsider its vote on any matter if an appropriate motion is filed no later than the next day the legislature is in session. *See* Arizona Senate Rule 13; Arizona House of Representatives Rule 24. The rules of the First

17

Legislature are not materially different in this regard. *See* Arizona Senate Rule 16 (1912); Arizona House of Representatives Rule 48 (1912). The Legislature also notes that each house can suspend its rules, which conceivably would allow a motion for reconsideration to be filed later than the day after the vote.

¶35    This case does not present and we do not address the effect of a motion for reconsideration on the Legislature's constitutional duty of presentment to the Governor. We reject, however, the suggestion that the Legislature's power to prospectively suspend or amend its internal rules somehow establishes that, in the absence of such a motion, the Legislature may delay indefinitely, or at least to the end of the legislative session, the presentment of finally passed bills.

¶36    The Legislature also notes that, over the last eighteen years, some twenty-five bills were delayed in their transmittal from six to forty-nine days. The basis for these delays, however, is not clear and it does not appear that any of them were challenged.[2] The Legislature in fact appears to have

---

[2]    The Legislature also identifies two bills that were finally passed but not transmitted to the Governor. Senate Bill 1007 was passed during the second regular session of the Thirty-Eight Legislature. Journal of the House of Representatives, 38th Leg., 2d Reg. Sess. 1127 (1988). Although not transmitted to the Governor as Senate Bill 1007, the text of the bill, as amended, was subsumed within Senate Bill 1261, which was signed into law by the Governor on July 1, 1988. *See* 1988 Ariz. Sess.

almost always presented bills to the Governor promptly upon their final passage. The Governor notes, and the Legislature does not dispute, that all 315 bills finally passed during the Second Regular Session of the Forty-Eighth Legislature were presented to the Governor within two days. Similarly, a partial review of bills passed in the first two legislatures suggests that each house regularly transmitted bills to the Governor upon receipt of a message from the other house indicating final passage. The corresponding legislature's journal entries state something to the effect of: "The President announced that Senate Bill No. 1 had been passed by the Senate and the House of Representatives and the Secretary was instructed to transmit same to the Governor."

¶37    The Legislature has not demonstrated any tradition of its withholding finally passed bills – or any acceptance of that practice by the other branches – sufficient to justify departing from the ordinary meaning of the constitution. At most, the Legislature has identified isolated instances when the

---

Laws, ch. 271, §§ 25, 26, 35, 44 (2d Reg. Sess.); S.B. 1007, 38th Leg., 2d Reg. Sess. (Ariz. 1988) (Senate engrossed version). House Bill 2408 passed during the first regular session of the Forty-Second Legislature. Journal of the House of Representatives, 42d Leg., 1st Reg. Sess. 695 (1995). The bill was held by the House after passage because the bill was identical to Senate Bill 1199, which was signed by the Governor on April 17, 1995. *See id.*; 1995 Ariz. Sess. Laws, ch. 136, § 1 (1st Reg. Sess.); H.B. 2408, 42d Leg., 1st Reg. Sess. (Ariz. 1995) (Senate engrossed version).

presentment of finally passed bills was delayed for unexplained reasons and apparently without objection from the Governor.

¶38    Finally, in its motion for reconsideration, the Legislature contends that "practical difficulties" will result if it must promptly present finally passed bills to the Governor.  Delay in presentment, the Legislature argues, will allow it the opportunity to "fix" legislative mistakes or otherwise reconsider bills.  We find this argument unpersuasive.  The constitution outlines a process to protect against the precipitous enactment of legislation – the Legislature itself determines when to enact bills, which are subject to three reads in each house and a roll call final vote.  Ariz. Const. art. 4, pt. 2, § 12.  If the Legislature concludes that it has mistakenly enacted a bill, members can urge the Governor to veto the bill or they can enact a corrective repeal or amendment.  As noted above, this case does not involve a motion seeking reconsideration of a house's approval of a bill, and we do not address the effect of such a motion on the duty of presentment.

¶39    Because the constitution directs that bills shall be presented to the Governor "when finally passed," we hold that the Legislature must present such bills to the Governor with no more delay than is reasonably necessary to complete any ministerial tasks and otherwise effect their orderly transmittal.  This standard was not met here.

**IV.**

¶40    Although we agree with the Governor that the Legislature cannot delay its presentment of finally passed bills to avoid her constitutional veto power, we declined in this case to grant the requested relief.  The Governor sought an order compelling the Legislature to deliver the Budget Bills to her by 5:00 p.m. on June 23.

¶41    Mandamus is based on equitable principles.  *Sines v. Holden*, 89 Ariz. 207, 209, 360 P.2d 218, 220 (1961).  Thus, "even in a case where an absolute legal right is shown," we retain discretion to determine what relief, if any, should be granted.  *Id*.  For several reasons, we declined to grant the requested relief here.

¶42    This case involves a good-faith dispute between the political branches of government about their respective roles in Arizona's lawmaking process.  Had the Legislature anticipated our decision it might have waited to finally pass the bills until nearer the end of the session.  Moreover, the Legislature committed to this Court to deliver the Budget Bills to the Governor by June 30, 2009.  Because these bills contained appropriations, the Governor was not faced with the prospect of signing or vetoing each of them in toto.  *See* Ariz. Const. art. 5, § 7.  Instead, she had the power – and could have announced her intent before the bills were presented – to use her line-

21

item veto authority to approve or reject particular parts of each bill. In these circumstances, granting the Governor's requested order would have advanced the delivery of the Budget Bills by merely a week and unnecessarily involved the Court further in this dispute among the political branches.

**V.**

¶43     We conclude that the presentment of the Budget Bills did not occur within the time mandated by the Arizona Constitution, but under the unique circumstances presented, we decline to grant the relief the Governor requested.

_____
W. Scott Bales, Justice


CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Ruth V. McGregor, Justice (Retired)

**B E R C H**, Chief Justice, concurring in the result

¶44     The Court concludes that the Arizona Constitution's Presentment Clause requires the immediate presentment of bills

22

to the Governor, allowing time only "to complete any ministerial tasks and otherwise effect their orderly transmittal." Op. ¶ 38; *see* art. 4, pt. 2, § 12 (presentment clause). Because I conclude that the constitution requires only the transmittal of bills within a reasonable time, I do not join in that portion of the majority opinion.

¶45    The Governor argues that the phrase "when finally passed" requires immediate transmittal; the Legislature maintains that it may transmit bills at its leisure. Both sides, in my opinion, overstate the case.

¶46    The majority emphasizes the Presentment Clause phrase "when finally passed" in concluding that transmittal must occur immediately after completion of ministerial tasks. The clause itself does not specify the timing of presentment, but the context in which the phrase "when finally passed" is used suggests that it simply means "once" or "after." *See Kilpatrick v. Superior Court*, 105 Ariz. 413, 419, 466 P.2d 18, 24 (1970) (requiring courts to construe the constitution as a whole and read its various provisions together). Section 12 provides in full as follows:

> Every bill shall be read by sections on three different days, unless in case of emergency, two-thirds of either House deem it expedient to dispense with this rule. The vote on the final passage of any bill or joint resolution shall be taken by ayes and nays on roll call. Every measure when finally passed

23

> shall be presented to the Governor for his approval or disapproval.

The section thus sets forth the general procedure for enacting a bill into law:  The bill must be read three times, unless the reading is waived, and then passed by a roll call vote in each chamber.  The "finally passed" bill must then be presented to the Governor, who may approve it or not.  The section does not say when the presentment must occur, and it is plausible to conclude, as the majority has, that presentment must occur immediately.  But given that the Framers did not explicitly require "prompt" or "immediate" presentation, it is more likely that the Framers intended presentment to occur within a reasonable time, but not necessarily immediately after final passage.

¶47    Several pieces of historical evidence support the conclusion that transmittal within a reasonable time is the appropriate standard.  Sources contemporaneous with the drafting of Arizona's Constitution show that the Framers likely understood the word "when" to be synonymous with "if" or "on the condition that."  *See Texas & P. Ry. Co. v. Beaird*, 169 S.W. 1050, 1051 (Tex. Civ. App. 1914) ("'[W]hen presented[]' . . . is equivalent to 'in case it is presented,' or 'on condition that it be presented.'"); *see also Mendenhall v. State*, 72 So. 202, 205 (Fla. 1916) ("The word 'when' has a conditional concept in

24

it, and as here used means 'if.'"); *Allen v. Powell*, 115 N.E. 96, 99 (Ind. App. 1917) ("[When] is frequently used in the sense of 'provided,' 'in case of,' 'and if,' or 'if.'" (citation omitted)); Webster's Revised Unabridged Dictionary 1644 (Noah Porter ed., 1913) (noting meaning as "at what time; at, during, or after the time that"). The Framers' understanding of "when" as encompassing "after" and "if," and their failure to include a term such as "forthwith," "promptly," or "immediately," suggests that presentment was to occur within a reasonable time after final passage of a bill. No language in the constitutional provision mandates immediate transmittal.

¶48    When a constitutional clause requires interpretation, we often look to the records of the constitutional convention for guidance. *E.g.*, *Cain v. Horne*, 220 Ariz. 77, 82, ¶ 20, 202 P.3d 1178, 1183 (2009). Those records show that the provision compelling transmittal of a bill "when finally passed" originally required filing of the bill in the office of the secretary of state, presumably after it not only had passed each chamber of the Legislature, but also had been signed by the Governor or vetoed and overridden by the Legislature. *See* The Records of the Arizona Constitutional Convention of 1910, at 1040 (John S. Goff, ed. 1991) [hereinafter "Records"] (Proposition 6 § 14 initially provided that "[e]very measure when finally passed shall be filed in the office of the

25

secretary of state."); *id.* at 1047 (replacing "secretary of state" with "office of the Governor"); *id.* at 583 (discussing the change from secretary of state to Governor). As so used, the phrase "when finally passed" clearly did not mean immediately after the roll call vote of ayes and nays in each chamber. The amendment from transmission to the secretary of state to transmission to the Governor demonstrates that the language "when finally passed" simply means "after" the bill's passage.[3] The Framers never discussed and did not intend to add an immediate transmittal requirement. *See id.* at 583. The discussion focused on who should receive the bill, not when it

---

[3]  The records contain the following discussion, in which the framers also appear to use the terms "when" and "after" interchangeably:

> Mr. Franklin:  . . . *After* a measure is passed by the legislature and signed by the governor, it is filed with the office of the secretary.
> Mr. Webb:  . . . [A] bill *after* final passage is submitted to the governor for his approval or disapproval . . . .
> . . .
> Mr. Webb:  . . . *After* final passage [a bill] is filed with the governor, and it is never returned and he files it with the secretary of state.
> Mr. Winsor:  . . . [T]he procedure is that *after* a bill is finally passed by the legislature it is filed with the governor for his action. . . .
> Mr. Franklin:  . . . *When* the bill is passed by the legislature, it is submitted to the governor [and if it becomes law] it is then filed in the office of the secretary of state . . . .

*Id.* (emphasis added) (using the terms "when" and "after" interchangeably); *see also id.* at 794, 799 (mentioning that the legislative presentment clause was included to indicate what happens to the bill "after passage").

26

should be transmitted. Nothing suggests that the provision was included to prevent delay in presentment. *Id.* at 853.

¶49 The conclusion that a reasonable presentment time was anticipated is further supported by the rules adopted by the First Legislature, several members of which served as delegates to the constitutional convention and therefore presumably understood the Framers' intent.[4] Each chamber of the Legislature adopted a rule based on Article 4, Part 2, Section 12. *Compare* First Legislature of the State of Arizona, Rules of the House of Representatives, 15 (1912) (Rule 59) (noting constitutional basis for rule) [hereinafter First House Rules], *and* State of Arizona, Rules of the First State Senate 21 (1912) (Rule 21(4)) [hereinafter First Senate Rules], *with* Ariz. Const. art. 4, pt. 2, § 12. Those rules allowed timely reconsideration of bills on which members had already voted. First House Rules 13 (Rule 48); First Senate Rules 17-18 (Rule 16). These reconsideration rules comport with the historical understanding that presentment need not occur immediately; a chamber may take a short but reasonable time after passing a bill to reconsider the wisdom of that act.

---

[4] Several convention delegates served in the legislature. Records at 1387-98. The first Speaker of the House and the first Senate President were each convention delegates, and each chaired the rules committee in his respective body. *Id.* at 1387, 1389; State of Arizona, Rules of the First State Senate, 2, 6 (1912); Journal of the First Legislature, Arizona House of Representatives, 17.

27

¶50     Every subsequent legislature has also permitted reconsideration of bills.  For example, the Third Legislature entertained a motion for reconsideration on a bill that had already passed both houses.  Third Legislature of the State of Arizona, Journal of the Senate 336, 338 (1917) (passing H.B. 4 without amendment, ordering its transmittal to the House, and then passing a motion for reconsideration, amending the bill, and transmitting the amended bill to the House), *in* State of Arizona, Journals of the Arizona Legislature (1917).  This historical evidence suggests that the Presentment Clause does not anticipate immediate transmittal because it would be inconsistent to require immediate presentment, yet allow the legislature discretion to reconsider a bill on which it had already affirmatively voted.

¶51     The majority suggests that the absence of delay between the time the First Legislature passed bills and their transmittal to the Governor suggests that that body contemplated an immediate transmittal requirement.  Perhaps.  On the other hand, it may simply show that the First Legislature had no reason to delay transmission of those bills.  The Legislature may choose to promptly present bills, even if doing so is not constitutionally compelled.  In contrast to this course of practice, the Legislature presented evidence of twenty-five bills on which presentment was delayed, in most cases from three

28

to four weeks. Although the majority dismisses this evidence because the Legislature did not show why the bills were delayed, *see* Op. ¶ 35, under the majority's analysis, if immediate presentment is constitutionally required, the motivation for the delay should not matter. If the Legislature lacks discretion to delay for any purpose, then any presentment that does not immediately follow prompt completion of ministerial tasks violates the constitution.

¶52 Because we generally respect our coordinate branches' actions as constitutional unless a clear violation exists, *Earhart v. Frohmiller*, 65 Ariz. 221, 224-25, 178 P.2d 436, 438 (1947), we should not lightly find unconstitutional the actions of previous Legislatures and the acquiescence of previous Governors in those actions. On balance, the evidence of past Legislatures' delay in presenting bills supports the current Legislature's position that it has some constrained discretion to determine the timing of presentment.

¶53 Additionally, although the language of the constitutional presentment clauses across the nation vary, no court analyzing a provision with language similar to Arizona's provision has found immediate transmission required. *See Cenarrusa v. Andrus*, 582 P.2d 1082, 1087 (Idaho 1978) ("There is no provision in our Constitution governing the time within which the legislature must present bills to the governor, and it is

29

not for this Court to impose any limitation as to time."); *Gilbert v. Gladden*, 432 A.2d 1351, 1355 (N.J. 1981) (A general presentment requirement does not "limit[] the time within which presentment may be accomplished."); *Campaign for Fiscal Equity, Inc. v. Marino*, 661 N.E.2d 1372, 1373 (N.Y. 1995) ("[A] bill which has passed both houses of the Legislature [must] be presented to the Governor for enactment into law or vetoing within a reasonable time after its passage."); *Zimmerman v. State*, 348 N.Y.S.2d 727, 733 (Ct. Cl. 1973) ("When a bill is to be presented is a determination to be made by the Legislature." (citing *Opinion of the Justices*, 213 A.2d 415 (N.H. 1965)); *State v. Heston*, 71 S.E.2d 481, 492 (W. Va. 1952) (The "section which requires every bill passed by the Legislature to be presented to the Governor before it becomes a law, prescribes no time within which it must be so presented.")  The Court's opinion makes Arizona an outlier on this issue.

¶**54**      Finally, logic and practice support allowing a reasonable time for transmittal.  The Governor has only five days to sign a bill while the legislature is in session or the bill will become law without her signature.  Ariz. Const. art. 5, § 7.  Some bills are very long and complex.  Governors have a lot to do.  Sometimes they are not available for short periods.  As a session nears its conclusion, many bills may be passed within a short time.  In such cases, a Governor might benefit

30

from the courtesy of advance notice and delayed transmission of a bill. The rule the majority adopts does not allow for such cooperation and professional courtesy. Under the rule announced today, the legislature lacks discretion to delay presentment beyond the time needed to complete ministerial tasks, despite a Governor's request for additional time or acquiescence in the delay.[5]

¶55 The majority criticizes allowing presentment within a reasonable time after final passage as a test lacking certainty. Op. ¶ 30. Yet as the majority itself recognizes, "[c]ourts regularly assess the reasonableness of actions in many contexts." *Id.* ¶ 20. We can assess reasonableness in this context as well. The reasonableness of any delay is tethered to the time of final passage by the constitutional requirement of presentment.

¶56 As with most standards, the contours for testing what constitutes a reasonable time would naturally develop as cases presenting the issue arose. Because the Court does not adopt this standard and because reasonableness must be determined in light of the context in which the question arises, there is little utility in engaging in the academic exercise of

---

[5] I recognize that each chamber maintains control over when voting occurs and thus may, as a practical matter, inject delay into the process.

surmising, in the absence of context, how much time would be presumptively reasonable.

**¶57** For the reasons expressed, I conclude that the Presentment Clause requires that bills that pass both houses be presented to the Governor within a reasonable time, but does not require immediate presentment.

_____
Rebecca White Berch, Chief Justice